**UNITED STATES**

v.

**Airman First Class Kirby D. BLEDSOE, Jr., FR 459–27–1207 United States Air Force.**

**ACM 23926.**

**Misc. No. 83–06.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 24 Feb. 1983.

Decided 30 Sept. 1983.

Appellate Counsel for the Accused: Colonel George R. Stevens and Major Richard A. Morgan.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Captain Brenda J. Hollis.

Before KASTL, RAICHLE and SNYDER, Appellate Military Judges.

## DECISION

KASTL, Senior Judge:

In the face of telling professional opinion questioning the accused's mental state, we return this case for further inquiry into his mental capacity and responsibility

### Facts

The accused was convicted of larceny and damage to property of the United States, in violation of Articles 121 and 108, U.C.M.J., 10 U.S.C. §§ 908, 921. His sentence extends to a dishonorable discharge, confinement at hard labor for 30 months, and accessory penalties.

The facts bearing on this issue are set forth in the able appellate defense brief:

During an Article 39(a), 10 U.S.C. § 839(a) session prior to arraignment, the military judge conducted an inquiry into the petitioner's competence to stand trial. This inquiry was due to the petitioner's failure to respond to the military judge's questions concerning whether or not he understood his rights to counsel. When the petitioner did respond, his responses in the record of trial appear garbled or unintelligible.

The prosecution presented the military judge with Prosecution Exhibit 1, a copy of the Sanity Board report. They also called Dr. (Lt. Colonel) Thomas A. Martin, III, as a witness. Dr. Martin testified that he is the Chief of In-Patient Psychiatry at Wilford Hall Medical Center. He was one of the staff psychiatrists involved in the Sanity Board proceedings pertaining to the petitioner. He diagnosed the petitioner as having symptoms of a conversion disorder and malingering.

In his opinion the conversion disorder was the predominant symptom. Dr. Martin explained that malingering is a conscious process, whereas a conversion disorder is an unconscious process. The conversion symptoms that the petitioner exhibited were an unusual gait and stance, a very unusual form of stuttering, and atasia (stumbling about).

The petitioner was evaluated by neurologists, a speech pathologist and a psychologist. There was no organic origin for his symptoms. The initial psychological testing done by Dr. Wooten, Chief Psychologist, Wilford Hall Medical Center, resulted in a diagnosis of malingering.

A conversion disorder is not a character and behavior disorder or a psychosis, but is a neurosis. The Sanity Board concluded that the conversion disorder was present at the time of the alleged larceny.

During his initial evaluation at Wilford Hall, the petitioner's symptoms fluctuated widely from being nearly catatonic to being someone who had just as much energy as anyone else.

Dr. Martin expressed his belief that the petitioner had sufficient mental capacity to understand the nature of the proceedings in the court-martial and the ability to cooperate or to conduct an intelligent defense.

The defense called Airman Basic Rex Anderson, a former inmate at the Consolidated Detention Facility, Lackland Air Force Base, as a witness on the issue of the petitioner's competence to stand trial. Anderson was confined with the petitioner from 1 January until 14 February 1983. He noticed that the petitioner sometimes got emotionally upset in his cell and cried. The petitioner was also frightened of things that had motors, such as the washing machine and the floor buffer. He noticed the petitioner often appeared to be mumbling and talking to non-existent people. Anderson further stated that the petitioner would sometimes play in the commode or urinal after he had used it and would also say he saw purple people.

Although it is not reflected in the record of trial, the staff judge advocate pointed out, in his post-trial review, that the demeanor of the petitioner during portions of the trial might also have raised the issue of sanity in the minds of the court members because he, at times, appeared to shake uncontrollably, had a blank stare, and what appeared to be involuntary movements, such as foot shuffling and leg jerking. (Staff Judge Advocate Post-Trial Review, pages 22, 30).

The Sanity Board was unable to determine whether the petitioner had a personality disorder because he was not cooperative. Dr. Martin felt there may have been a mixed personality disorder. This would have been an anti-social personality or what in the past has been called a sociopathic or psychopathic personality. This is the type of person who cannot conform his behavior to the usual norms of society, tends to be amoral, remorseless, and without guilt for actions he has performed against society. The petitioner also exhibited a dependent personality and a schizotype personality. He reported seeing purple people or chickens pecking on his skin and played with fecal materials while in the confinement facility. A schizo personality is one where the individual's thinking is a little bit different than the norm and involves the type of person who tends to say and do unusual things. In Dr. Martin's opinion, the conversion disorder was the most prominent symptom during the petitioner's hospitalization.

In his *Goode* response, the trial defense counsel pointed out that the Government, at the petitioner's pretrial confinement hearing, had argued that he was a danger to himself because of his mental condition and produced the testimony of a clinical psychologist and a staff psychiatrist. One of the reasons that the petitioner was continued in pretrial confinement was because he presented a danger to himself and others. The investigating officer, at the second Article 32 investiga-

tion, [a military judge] pointed out, in his report of 18 January 1983, that the "accused's responses at the investigation were barely comprehensible and sometimes unintelligible" (¶ 10c, page 3, Investigating Officer Report). The investigating officer stated that he believed the petitioner "did not fully comprehend the nature of the proceedings." He described his observations of the petitioner as "an experience I shall never forget." (¶ 18c, page 4, Investigating Officer Report).

In his post-trial review, the staff judge advocate agreed that it was "clear that the accused did have a mental disease or defect, namely, a conversion disorder ..." (SJA Review, page 29). However, it was the SJA's belief that the petitioner nevertheless did not lack substantial capacity to form the specific intent necessary to commit the offenses charged [page references omitted].

### Basis For New Trial Request

Based on these facts, the appellate defense counsel petition this Court for a new trial under Article 73, U.C.M.J., 10 U.S.C. § 873, noting that we may also wish to order a new sanity board as well.

In his Affidavit In Support of Petition for New Trial, Lieutenant Colonel Wooten concludes as follows:

> I am now of the opinion that [the accused at trial] was then incapable of cooperating and assisting in his own defense on a reasonably intelligent basis. I also judge him to be less than fully mentally competent at the time of the offenses.

Colonel Wooten had seen the accused in about 12 sessions of psychotherapy. He now concludes that his initial consultation and final diagnosis "while not in error, were incomplete." Colonel Wooten's initial contact with the accused had led him "to the opinion that he was competent."

Appellate defense counsel urge that such information raises a substantial doubt as to the accused's sanity at the time of the offenses and at trial. They contend that trial defense counsel did all he could to inquire into the accused's sanity pretrial, and the information before us now is newly discovered evidence thus entitling the accused to a new trial.

### Analysis

Military law accords insanity a preferred status. *United States v. Babbidge,* 18 U.S.C.M.A. 327, 40 C.M.R. 39, 41 (1969); *United States v. Carey,* 11 U.S.C.M.A. 443, 29 C.M.R. 259 (1960). There are three distinct stages when the issue of the accused's sanity, if reasonably raised, should be the subject of inquiry: (1) at the time of the commission of the offense; (2) at the time of trial; and (3) at time of appellate review. *United States v. Thomas,* 13 U.S.C.M.A. 163, 32 C.M.R. 163 (1962). Of course, if an accused is found to be insane at the time of appellate review, the appellate proceedings are tolled. *United States v. Korzeniewski,* 7 U.S.C.M.A. 314, 22 C.M.R. 104 (1956). Further inquiry into the accused's mental condition is required when it appears warranted in the interest of justice, regardless of whether the question was raised at trial or how it was determined if raised. M.C.M., 1969 (Rev.), para. 124. *See United States v. Walker,* 20 U.S.C.M.A. 241, 43 C.M.R. 81 (1971).

In the case *sub judice* the information available to us creates a sufficient doubt to warrant further inquiry into the accused's mental capacity at the time of the commission of the offenses and time of trial. *United States v. Triplett,* 21 U.S.C.M.A. 497, 45 C.M.R. 271 (1972). Hence, we set aside the convening authority's action and return the case.

The convening authority may institute a further sanity inquiry consistent with this decision. Any additional sanity proceeding will specifically review and determine, in accordance with M.C.M., para. 121:

> 1. The accused's mental responsibility for the offenses of which he was convicted;
>
> 2. The accused's mental capacity during his court-martial; and

3. The accused's present mental capacity as it relates to the appellate process.

If the results of these proceedings demonstrate the accused's mental capacity and responsibility, a new staff judge advocate's review should be prepared and furnished to accused's counsel pursuant to *United States v. Goode,* 1 M.J. 3 (C.M.A.1975).

If: (a) further sanity study is not feasible for any reason; or (b) during the course thereof or after its completion the supervisory authority is satisfied that the accused lacked or lacks mental capacity or responsibility; or (3) for any other reason the prosecution should be terminated, the convening authority may dismiss the charges and specifications.

The action of the convening authority is set aside and the record of trial is returned to The Judge Advocate General, United States Air Force, for return to the convening authority.

SNYDER, Judge, concurs.

RAICHLE, Judge, absent.