DECISION UPON FURTHER REVIEW
HODGSON, Chief Judge:
The principal issues before us are the appellant’s mental condition and the procedure by which this evidence was presented to the members, together with the prosecution’s pretrial knowledge of statements made by the appellant during the sanity inquiry. We find no error to warrant setting aside the appellant’s conviction. However, to better understand the assigned errors a brief discussion of the facts and appellate history would be helpful.
I
The circumstances surrounding the offenses at bar are not complicated. The record disclosed that on 14 July 1982, the appellant took, without permission, various personal items, i.e., a color television set, camera, lens, etc., from two airmen living in the barracks. Some five months later, 30 December 1982, he did considerable damage to the hospital room where he was assigned and to his room in the barracks. Prior to trial the appellant met a Sanity Board which concluded that he was suffering from a conversion disorder[1] and malingering — the conversion disorder being the predominant symptom. He did not lack the capacity to appreciate the criminality of his conduct and could conform his conduct to the requirements of law. He was diagnosed as competent to stand trial.
At trial he defended the larceny allegation on the lack of credible evidence coupled with an assertion that he was too intoxicated to form the required intent, and argued that he lacked the necessary mental responsibility to be held accountable for his actions in damaging property of the United States. The members were given both defense theories with full and complete instructions.
*497 Subsequent to his conviction, the appellant, on 22 June 1983, petitioned this Court for a new trial. See Article 73, U.C.M.J., 10 U.S.C. § 873. In support of this petition he filed a post-trial affidavit from a clinical psychologist who stated that his earlier diagnosis “while not in error, [was] incomplete.” This individual was now of the opinion that the appellant was “less than fully mentally competent at the time of the offenses.” Appellate defense counsel maintained that this information together with the evidence of record raised a substantial doubt as to the appellant’s sanity at the time of the offenses and at trial. They contended the evidence was newly-discovered and likely to produce a different result had it been known at trial, thus requiring that the appellant be given a new trial.
In our original review, we considered the available information from all sources to be sufficient to justify a further inquiry into the appellant’s mental condition. Accordingly, we set aside the convening authority’s action, and gave him the option of instituting further sanity proceedings consistent with our opinion or dismissing the charges. United States v. Bledsoe, 16 M.J. 977 (A.F.C.M.R.1983). A second Sanity Board was convened on 15 November 1983. This Board determined that at the time of the offenses of which the appellant was convicted he had no mental disease or defect, and had no mental disorder that would warrant a medical separation. The psychiatric diagnosis included symptoms of malingering, mixed personality disorder with antisocial and schizoid features and severe psychosocial stress. The Board concluded by stating that the appellant was aware of the criminality of his actions and could conform them to the requirements of law.
After hearing oral argument on the Petition for New Trial, we found no reasonable doubt as to the sanity of the appellant at the relevant times. Accordingly, on 22 June 1984, it was denied. The appeal is now before us for consideration of assigned errors.
II
Appellate counsel contend the trial judge committed prejudicial error in allowing the prosecution to put on expert psychiatric testimony in its case prior to the defense offering any evidence of the issue on insanity. The record reveals that the appellant’s mental state was considered a major issue early in the proceedings with the judge hearing evidence as to the accused’s mental capacity to stand trial. Two psychiatrists who were members of the Sanity Board which had earlier examined the appellant testified that he had sufficient mental acumen to understand the proceedings and could cooperate in his defense. After considering this testimony and hearing argument the trial judge ruled that the appellant was competent to stand trial.
During an out-of-court session to discuss preliminary matters, defense counsel indicated that Doctor Martin, a military psychiatrist who had earlier testified as to the appellant’s capacity to stand trial, would attest that the appellant was not able to control his behavior in formulating the specific intent required to cause “willful damage to government property.” Later, during voir dire of the members, the defense made it clear that their client’s lack of mental responsibility was a key issue as to the damage to government property allegations, and that a defense based on that condition would be urged in his behalf.
After Government counsel suggested in his opening statement that the appellant was free from any mental defect or disease that might affect him being held accountable for his actions, and that the prosecution would offer evidence to support this, individual defense counsel asked for a mistrial, urging that a “sanity defense” should be initiated by the defense, not the government. The trial judge denied the mistrial and allowed the prosecution to offer evidence establishing the appellant’s sanity during it’s case in chief.
Appellate counsel contend the judge’s ruling was erroneous and resulted in prejudice in two areas. First, it allowed the government to control the defense’s case *498 by requiring it to respond to the testimony in kind. And second, the ruling permitted the government to put on extensive evidence that the appellant was not truly mentally ill, but a malingerer. They assert, referring to the post-trial affidavit in support of the Petition for New Trial, that such testimony was not a true reflection of the appellant’s mental state.
Citing Mil.R.Evid. 302(b)(2)[2] as authority they urge that introduction of expert testimony on mental responsibility by the defense is a condition precedent to the government’s ability to put on expert testimony to the contrary. We agree that the defense’s interpretation of this provision is reasonable, but hasten to suggest that it must be read in conjunction with Mil.R. Evid. 611(a), which allows the trial judge to exercise reasonable control over the presentation of evidence in order to develop the facts without needless consumption of time. Clearly, a trial judge retains the traditional power to depart from the usual order of proof. United States v. Terry, 729 F.2d 1063 (6th Cir.1984). While we think it the far better practice for the government to respond to a defense assertion that the accused lacks the requisite mental responsibility, we do not find, in the case before us, that the trial judge abused his discretion in allowing the government to proceed in its case in chief with testimony relating to appellant’s mental state. It is readily apparent from the record that mental responsibility or lack thereof was the pivotal issue as to the damaging government property allegation; trial defense counsel made that clear during his voir dire. The evidence the government offered during its initial presentation was admissible in rebuttal. Malingering, as a symptom of the appellant’s overall condition, was a medical diagnosis and was relevant testimony. The appellant was not surprised by the testimony nor was he prejudiced. Accord United States v. Walker, 12 M.J. 983 (A.F.C.M.R.1982).
Ill
After Doctor Martin testified concerning the appellant’s mental condition, the trial counsel asked the military judge to release the narrative portion of the Sanity Board’s findings as an aid in cross-examination. He contended that Doctor Martin’s testimony “opened the door” to examination of statements the appellant may have made during the sanity hearing. In the course of his argument urging the trial judge to release the material, the prosecutor disclosed that he had knowledge of these statements prior to trial. The first statement concerned the financial problems the appellant was experiencing, which the prosecution maintained went toward establishing the motive for the thefts. The second related to a conversation Doctor Martin overheard in the hospital corridor between the appellant and Doctor Townsend-Parchman (a Sanity Board member) to the effect that he (appellant) was “going to beat this rap” and no one was “going to get [him] on this offense [referring to the larceny].” Doctor Martin was not a party to the conversation but overheard it as he was walking by.
Appellate defense counsel contend that the trial counsel’s knowledge of these statements, which he admitted he knew were privileged, were in contravention of paragraph 121, M.C.M., 1969 (Rev.) which states in part:
No individual, other than defense counsel, accused, or, after referral of charges, the military judge, shall disclose to the trial counsel any statement made by the accused to the [Sanity Board] or any evidence derived from that statement. [Emphasis added]
Relying on this provision they urge that the trial judge erred in admitting the state *499 ments which were breaches of the privilege created in Mil.R.Evid. 302(a).
Appellate government counsel argue that the defense “opened the door” to a discussion of the appellant’s financial problems by their examination of Doctor Martin about their client’s background, and that the conversation Martin overheard in the hallway was not part of the Sanity Board evaluation and thus was not privileged.
There is no question but that trial counsel had knowledge of at least one statement by the appellant that was directly connected to the Sanity Board. He admitted this to the trial judge and candidly acknowledged knowing it was restricted information.
The issue before us is one of first impression. Should a sanction be applied, e.g., disqualification of the trial counsel or referral to a different convening authority when the prosecution is privy to statements an accused has made during a sanity hearing? And whether a sanction is imposed or not, does such disclosure require a per se rule of general prejudice as is applied when a confession is improperly admitted, United States v. Taylor, 5 U.S.C.M.A. 178, 17 C.M.R. 178 (1958), or may the disclosure be viewed as harmless error where the evidence of guilt is compelling? The Court of Military Appeals and the Courts of Military Review have upheld the harmless error doctrine in numerous decisions involving errors of less than Constitutional dimension. United States v. Colcol, 16 M.J. 479 (C.M.A.1983); United States v. Allen, 7 M.J. 345 (C.M.A.1979); United States v. Thompson, 14 M.J. 721 (A.F.CM.R.1982); United States v. Clark, 12 M.J. 978 (A.F.C.M.R.1982); United States v. Olah, 12 M.J. 773 (A.C.M.R.1981); United States v. Bell, 3 M.J. 1010 (A.C.M.R.1977); United States v. Midkiff, 15 M.J. 1043 (N.M.C.M.R.1983). Since the error under review concerns a procedural rule, any misapplication would not attain Constitutional proportion. An error not of Constitutional proportion may be found harmless if it can be determined that the factfinder was not influenced by it or the error was de minimus on the resolution of the issue. United States v. Mendoza, 18 M.J. 576 (A.F.C.M.R.1984). We are aware that some legal commentators equate Mil.R.Evid. 302 with the broad protections offered by Article 31(b) of the Code, 10 U.S.C. § 831(b). See Saltzburg, Schinasi and Schueter, Military Rules of Evidence Manual 64 (1981). However, we think a better reasoned approach is to determine if the challenged information was harmless error in light of the other evidence.
The statement involving the appellant’s financial problems impacts only the larceny allegation. The defense theory was two-fold: 1) a denial that the appellant stole the property; and 2) his degree of intoxication negated the specific intent required for a wrongful taking. To meet its burden the Government established that Airman First Class Aaron A. Emfield left the Non-Commissioned Officers Club with the appellant at 2000 hours, 14 July 1982. They walked to their barracks nearby. Emfield did not remember anything after “hitting the bed” because he was intoxicated and on medication. The next morning he discovered his Ricoh camera and accessories missing as well as his roommate’s RCA color television. A security policeman on patrol and who was in the barracks saw the appellant enter Emfield’s room with Emfield. Later that evening he saw the appellant leave the building carrying a “box-like object.” That same evening the appellant admitted to a friend, while seeking to borrow his car, that he had taken a television and other items from Emfield’s room and needed to get off base. He later borrowed a car from another airman and drove off base to the residence of Gerald E. Hernandez, a former Air Force member, who testified that the appellant brought him a television and Ricoh camera to sell. Law enforcement officers subsequently recovered the items which were identified by their owners.
Under these facts we discern no prejudice flowing to the appellant from the use of a “privileged” statement providing a possible motive for the larceny. The evi *500 dence of guilt is otherwise compelling. United States v. Logan, 18 M.J. 606 (A.F. C.M.R.1984).
We turn now to the overheard conversation in the hospital hall between the appellant and Doctor Townsend-Parchman. The nature and location of the communication does not support a realistic assertion that it was a part of the Sanity Board proceedings. It was made under such circumstances that a disclosure by someone overhearing it was not only possible but quite likely. See generally United States v. Robbins, 47 C.M.R. 917 (A.F.C.M.R. 1969). In our opinion this was not the communication situation that Mil.R.Evid. 302 was enacted to protect. Not being part of the Sanity Board’s proceedings, no privilege attached to the overheard statement, which impacts only the larceny conviction.
As stated earlier in this opinion, the trial counsel recognized that the information he uncovered during his pre-trial investigation was ostensibly privileged. However, he did not disclose this fact until that point in the trial when he thought it was admissible in rebuttal. As a part of his disclosure he assured the Court that he had “not used this information in anyway.” We accept his averment as being made in good faith, but we nevertheless strongly urge that where the prosecutor has directly or indirectly learned of an accused’s statement which is apparently privileged under Mil.R.Evid. 302, he should immediately disclose this fact to defense counsel and the military judge. See generally United States v. Littlehales, 19 M.J. 512 (A.F.C.M. R.1984).
IV
Appellate counsel urge that the evidence fails to establish beyond a reasonable doubt that the appellant had the capacity to form the requisite specific intent to willfully damage government property. At trial the appellant stipulated he damaged the rooms in the manner alleged. He maintained then as he does now that his mental capacity was so impaired that he was not criminally liable for his conduct. This issue was fully litigated at trial and submitted to the members under the proper instructions. We have examined the record and find no basis to disturb the Court’s determination of mental competency implicit in its findings of guilty. Article 66(c), U.C.M.J., 10 U.S.C. § 866(c); United States v. Ragan, 10 C.M.R. 725 (A.F.B.R.1953).
We find appropriate only so much of the sentence as provides for a bad conduct discharge, confinement at hard labor for 20 months, forfeiture of $397.00 per month for 20 months and reduction to airman basic. The findings of guilty and sentence, as modified, are
AFFIRMED.
FORAY, Senior Judge and MURDOCK, Judge, concur.

. A conversion disorder is a pseudo-neurological symptom that results in such difficulties as "walking," loss of vision, loss of speech, loss of feeling in a part of the body, blocking of memory, etc. It is not a character and behavior disorder or a pyschosis, but is a neurosis. The Sanity Board was unable to determine whether the appellant had a personality disorder because he was not cooperative.

. Rule 302. Privilege Concerning Mental Examination of an Accused.
(b) Exceptions.
(2) An expert witness for the prosecution may testify as to the reasons for the expert's conclusions and the reasons therefor as to the mental
state of the accused if expert testimony offered by the defense as to the mental condition of the accused has been received in evidence, but such testimony may not extend to statements of the accused except as provided in (1). [Emphasis provided]