**UNITED STATES, Appellee,**

v.

**Specialist Michael LILLY, 236–04–2476, United States Army, Appellant.**

**CM 444919.**

U.S. Army Court of Military Review.

31 Jan. 1992.

For Appellant: Captain Timothy M. Lawlor, JAGC (argued), Lieutenant Colonel James H. Weise, JAGC, Major Michael J. Kelleher, JAGC, Captain Michael P. Moran, JAGC (on brief).

For Appellee: Captain Steven M. Walters, JAGC (argued), Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Joseph C. Swetnam, JAGC, Captain Timothy W. Lucas, JAGC (on brief).

Before GRAY, FOREMAN and CREAN, Appellate Military Judges.

## OPINION OF THE COURT ON FURTHER REVIEW

FOREMAN, Senior Judge:

This case is before this Court again after over eight years of psychiatric evaluation and litigation on the questions of mental responsibility and mental capacity. We are now presented with issues of whether the military judge correctly found the appellant competent to stand trial and whether, upon receiving pleas of guilty from the appellant, the military judge correctly advised

the appellant on the law regarding the defense of insanity. In addition, the appellant now contends that he has been deprived of due process because of the lengthy appellate review of this case.

On 21 and 22 July 1983, a general court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of rape, attempted rape, burglary, and indecent assault, all offenses occurring between 20 February and 31 May 1983, in violation of Articles 120, 80, 129, and 134 of the Uniform Code of Military Justice, 10 U.S.C. §§ 920, 880, 929, and 934 (1982) [hereinafter UCMJ]. The approved sentence provided for a dishonorable discharge, confinement for 30 years, forfeiture of all pay and allowances, and reduction to Private E1.

No issues of mental responsibility or capacity were raised at the trial. A psychiatrist, Captain (CPT) Eggen, examined the appellant prior to his trial and found him to have an adjustment disorder and a mixed personality disorder. Captain Eggen opined that the appellant was mentally responsible at the time of the offenses and competent to stand trial. After the trial, on 22 August 1983, the appellant was examined by a civilian forensic psychiatrist, Doctor Rollins, who diagnosed him as schizophrenic. Doctor Rollins opined that the appellant was not mentally responsible at the time of the offenses and not competent to participate in further legal proceedings.

On 28 December 1983, a psychologist, Doctor Hall, found that the appellant had a mixed personality disorder but had been mentally responsible at the time of the offenses and competent to participate in legal proceedings. At about the same time, CPT Eggen, who had examined the appellant in July 1983, again examined the appellant in connection with a post-trial sexual assault in the confinement facility and diagnosed the appellant as having a mixed personality disorder and psychosexual disorder. Captain Eggen opined that the appellant was not mentally responsible for the post-trial offense but mentally competent to participate in legal proceedings.

On 25 May 1984, a second psychologist, CPT Walters, diagnosed the appellant as schizophrenic and obsessive compulsive, and commented on the possibility that the appellant was malingering. On 30 August 1984, at the request of appellate defense counsel, this Court ordered that a sanity board be conducted. *United States v. Lilly*, CM 444919 (A.C.M.R. 30 Aug. 1984) (order) (unpub.). On 24 October 1984, a sanity board convened at the United States Disciplinary Barracks (USDB) and concluded that the appellant was not mentally responsible at the time of the offenses and not mentally competent to participate in legal proceedings. In April 1985, a second sanity board convened at Fitzsimons Army Medical Center and concluded that the appellant, who at this time was heavily medicated with Thorozine, was mentally responsible at the time of the offenses and mentally competent. On 17 June 1985, the sanity board at the USDB reconsidered its findings in light of the findings of the Fitzsimons sanity board and found the appellant competent but not mentally responsible at the time of the offenses. On 21 August 1985, this Court affirmed the findings and sentence. *United States v. Lilly*, CM 444919 (A.C.M.R. 21 Aug. 1985) (unpub.).

While in confinement, the appellant's mental health appeared to deteriorate. On 21 October 1987, Lieutenant Colonel (LTC) Smith, Director, Mental Health, USDB, diagnosed the appellant as "clearly delusional."

On 22 February 1988, the Court of Military Appeals set aside the decision of this Court. *United States v. Lilly*, 25 M.J. 403 (C.M.A.1988). The Court of Military Appeals held that this Court erred by making its own determination of mental responsibility and should have returned the case for determination by a court-martial. *Id.* at 408. On 8 March 1988, this Court ordered the parties to file additional briefs. *United States v. Lilly*, CM 444919 (A.C.M.R. 8 Mar. 1988) (order) (unpub.). The case was held in abeyance at the request of appellate defense counsel for approximately one year.

On 28 March 1988, the appellant was examined by LTC Vandervalle, Chief, Psychiatric Division, USDB, who found him to be incompetent. Lieutenant Colonel Vandervalle noted that the appellant had refused to take his medication since October 1987. Lieutenant Colonel Vandervalle recommended transfer to a psychiatric treatment facility where "medication could be initiated in order that ... [the appellant] could become competent to participate in any further legal proceedings." On 5 May 1988, Colonel (COL) Ketchum, Chief, Consultation Psychiatry Service, Fitzsimons Army Medical Center, diagnosed the appellant as having a severe personality disorder but opined that he was competent. On 11 May 1989, LTC Vandervalle again examined the appellant and diagnosed an atypical psychosis and again commented on the appellant's refusal to take medication. Lieutenant Colonel Vandervalle opined that the appellant was not competent.

On 9 February 1990, this Court, having received requests from both government appellate counsel and defense appellate counsel for yet another sanity board, declined to order a sanity board and ordered a rehearing on the issues of mental responsibility and mental competence. *United States v. Lilly*, CM 444919 (A.C.M.R. 9 Feb. 1990) (unpub.).

On 8 March 1990, CPT Kea, Chief, Clinical and Research Psychology Division, USDB, diagnosed the appellant as a paranoid schizophrenic and opined that he was not competent. On 4 May 1990, a third sanity board composed of two psychiatrists and one psychologist, convened in Nuernberg, Germany, and opined that the appellant was competent and had been mentally responsible at the time of the offenses.

On 24 May 1990, a military judge sitting as a general court-martial conducted the rehearing. At the rehearing Staff Sergeant (SSG) Gaston testified that he escorted the appellant from the USDB to Germany for the rehearing. Staff Sergeant Gaston was assigned to the Office of the Staff Judge Advocate, 1st Armored Division, and had been a legal specialist for about nine years and a military policeman for three years. During the 13–14 hour trip to Germany he and the appellant engaged in "generic conversation" as well as a discussion of appellant's case. Staff Sergeant Gaston testified that the appellant appeared to have a good working knowledge of the appellate process in his case and the implications of the rehearing.

Sergeant (SGT) Pugh was the escort and driver for the appellant on approximately five occasions after the appellant was returned to Germany for the rehearing. Each occasion was two to three hours long. He and the appellant conversed about the conditions at the USDB, the terms of the appellant's pretrial agreement, and general unrelated topics. Sergeant Pugh noticed nothing abnormal about his conversations with the appellant.

Sergeant First Class (SFC) Rourk, the noncommissioned officer-in-charge of the appellant's "housing domicile" at the USDB, testified that he saw the appellant daily and noticed no hallucinations, delusions, or unusual conduct.

Lieutenant Colonel Stropko, Chief of the Psychology Service at the 98th General Hospital in Nuernberg, Germany, and a member of the 4 May 1990 sanity board, described in detail the tests which were administered to the appellant and described his interview with the appellant. Lieutenant Colonel Stropko interviewed the appellant for approximately one and one-half hours. Lieutenant Colonel Stropko testified that the purpose of the interview is to "check out the mental status or the mental state of the patient" and also to "put it with the psychological testing so that psychological testing is not looked at in isolation." Lieutenant Colonel Stropko stated that he found the appellant had no hallucinations or delusions, no memory problems, and no loss of contact with reality. He concluded that the appellant was not psychotic and that he was mentally competent to participate in legal proceedings.

On cross-examination, LTC Stropko testified that the interview was conducted in a relaxed environment. He testified that it was possible, but not probable, that a

stressful situation could push the appellant into a transient psychotic episode.

Lieutenant Colonel Bell, Chief, Department of Psychiatry, 98th General Hospital, chaired the 4 May 1990 sanity board. He testified that he was given all the prior sanity evaluations, the appellant's psychiatric history at Fort Leavenworth, and the original record of trial. Lieutenant Colonel Bell interviewed the appellant, explained the sanity board procedure, informed the appellant that he had a choice of whether to participate in the evaluation, the right to consult with his lawyer at any time, and to choose not to answer specific questions. Lieutenant Colonel Bell discussed the prior trial at length with the appellant and the impact of a sanity board finding that the appellant was not mentally responsible. The interview lasted about one hour. Lieutenant Colonel Bell stated that the interview was a means to determine whether the appellant had the capacity to understand and relate to him and to have "logical thought processes." Lieutenant Colonel Bell attempted to obtain some history from the appellant but found the appellant reluctant to discuss his past. Lieutenant Colonel Bell testified that he asked the appellant for his history because, "[i]t's not quite so important what the story is, as the way that it's organized and presented to you. That tells you whether his thoughts are logical, coherent, whether he can focus on a goal and go toward that goal in his thinking process and not get derailed into another subject." Lieutenant Colonel Bell also observed the appellant's physical appearance and behavior during the interview. Lieutenant Colonel Bell concluded that the appellant had a personality disorder but no mental disorder, and that the appellant had the capacity to understand and participate in legal proceedings.

On cross-examination, the defense established, as they did with LTC Stropko, that the interview was in a low stress atmosphere. When questioned about the conclusions of other psychiatrists and psychologists who concluded that the appellant was not competent, LTC Bell responded:

Well, I don't think it is entirely necessary for me to test their conclusion. It's quite possible that in the stress of prison, for instance, that he did appear psychotic at times. And it's quite possible that having been relieved of that stress and sent to Fitzsimons Army Medical Center for an evaluation that he looked different at that time, I think.... There is, for instance, a disorder—a borderline personality disorder which can have psychotic episodes at times.

Captain Otrhalek, Chief of the Social Work Mental Health Services at the Mannheim Confinement Facility, testified that he interviewed the appellant when he arrived in April 1990 and observed him on a daily basis thereafter. Captain Otrhalek stated that he observed no signs of delusions or hallucinations and no problems except occasional depression, which he attributed to the appellant's continued confinement.

Captain Kea testified for the defense. Captain Kea first met the appellant at the USDB in February 1989, after he received reports from other mental health professionals that the appellant had mental health problems. Captain Kea conducted five interviews with the appellant, ranging from "a quick five minutes to two hours," totaling about 10–12 hours, and observed him daily. Captain Kea received numerous reports of the appellant's bizarre behavior: talking to his toilet, informing others that he was an undercover cop, saying that he was not Michael Lilly, talking to the generators, saying he has a dog in his cell, reporting that devils are after him, and the like. Unlike LTC Stropko and LTC Bell, CPT Kea intentionally put stress on the appellant. Captain Kea diagnosed the appellant as a paranoid schizophrenic. Captain Kea opined that the appellant was not competent to understand the nature of the legal proceedings.

The military judge found that the appellant was competent to participate in the rehearing. The military judge applied the standard in the Manual for Courts–Martial, United States, 1969, paragraph 120, which was applicable at the time of the original trial in July 1983, and which required that the government prove beyond a reasonable

doubt that the appellant was competent to stand trial. Thereafter, the appellant entered pleas of guilty to all charges and specifications.

During the plea inquiry, the military judge advised the appellant on the insanity defense. During his advice the military judge explained the insanity defense as follows:

> This court, in deciding that issue, would have to decide whether at the time of your alleged criminal misconduct, and as a result of such mental disease or defect, assuming that one does exist, you lacked substantial capacity to appreciate the criminality of your conduct.
>
> In addition, the court would have to determine, beyond a reasonable doubt, whether at the time of your alleged criminal conduct, and as a result of such mental disease or defect, you lacked substantial capacity to conform your conduct to the requirements of the law.
>
> Do you understand the defense of lack of mental responsibility at the time of the offenses?
>
> ACC: Yes, sir, Your Honor.
>
> MJ: Okay. Now, I want you to understand that if this court were to find beyond a reasonable doubt that at the time of the alleged offenses you lacked the mental responsibility, then you cannot legally be convicted of any of these offenses. Do you understand that?
>
> ACC: Yes, sir, Your Honor.

The military judge then defined mental responsibility and moved on to partial mental responsibility. He informed the appellant:

> So even were a court not to believe beyond a reasonable doubt that you lacked mental responsibility at the time of the offense, the court could nevertheless determine that you lacked partial mental responsibility or that you were only partially mentally responsible at the time of these offenses and that, therefore, you could not have entertained the specific intents necessary for you to be found guilty of these offenses.

Thereafter, the military judge convicted the appellant in accordance with his pleas, and sentenced him to a dishonorable discharge, confinement for 25 years, forfeiture of $500.00 pay per month for 300 months, and reduction to Private E1. In accordance with a pretrial agreement, the convening authority reduced the period of confinement to time served and approved the dishonorable discharge, forfeitures, and reduction.

The appellant now contends that (1) the military judge erred by finding beyond a reasonable doubt that the appellant was competent at the time of the rehearing; and (2) the appellant has been denied due process of law by the inordinate delay in the appellate review of his conviction. This Court ordered briefs on two issues: (1) Whether the military judge correctly advised the appellant on the burden of proof which would apply to an insanity defense; and (2) If not, whether the pleas of guilty were rendered improvident by the incorrect advice.

## I.   MENTAL CAPACITY

In resolving the question of mental capacity, we must first determine what law applies to the appellant's case. At the time of the offenses and the original trial, the Manual for Courts–Martial, United States, 1969 (Rev. ed.) [hereinafter MCM, 1969], was in effect. Paragraph 120d of the 1969 Manual provided that, "No person should be brought to trial unless he possesses sufficient mental capacity to understand the nature of the proceedings against him and to conduct or cooperate intelligently in his defense." Paragraph 122a of the 1969 Manual placed the burden on the prosecution to prove mental capacity beyond a reasonable doubt. At the time of the rehearing, the Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 909(c)(2) [hereinafter R.C.M.], had shifted the burden to the accused to establish lack of competence by a preponderance of the evidence.

It is not enough to establish mental competence that an appellant be oriented to time and place and have some recollection of events. The test is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree

of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

We need not determine whether the changes in the burden of proof and quantum of proof regarding mental capacity are substantive or procedural, because the result is the same in either case. If the changes are substantive, then the ex post facto clause of the Constitution would require that the appellant be given the advantage of the more favorable burden of proof which was in effect at the time of the offenses and his original trial. If the changes are procedural, Rule for Courts–Martial 810 of the 1984 Manual provides that, at a rehearing, the procedures will be the same as at the original trial. Therefore, we hold that the military judge correctly applied the 1969 standard in determining the appellant's competence to stand trial.

We disagree with the appellant's assertion that the evidence is insufficient to establish his competence beyond a reasonable doubt. Although the record is replete with apparently contradictory diagnoses, we are satisfied that at the time of the rehearing the appellant was competent. Whether that was due to heavy medication, effective treatment, or the passage of time we need not determine.

## II. PROVIDENCE OF THE PLEAS OF GUILTY

At the time of the offenses and the original trial, the burden of proof was on the prosecution to prove the appellant's sanity beyond a reasonable doubt. MCM, 1969, paras. 120 and 122. At the time of the rehearing, the appellant had the burden of proving insanity by clear and convincing evidence. UCMJ, art. 50a(b), 10 U.S.C. § 850a(b).

We hold that the change in the burden and quantum of proof of insanity is a substantive change, and that the ex post facto clause required that the 1969 standard be applied in appellant's rehearing. A change in the law is not ex post facto if it does not make an innocent act criminal, provide for greater punishment, or change the proof necessary to convict. *Dobbert v. Florida*, 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977) (citing *Hopt v. Utah*, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884)). A change in the permissible modes of proof does not make a law ex post facto; a change in what must be proven is ex post facto. Prior to enactment of Article 50a, the prosecution was required to prove sanity beyond a reasonable doubt; after the enactment of Article 50a, the accused was required to prove insanity by clear and convincing evidence. In short, Article 50a changed what the prosecution must prove to convict; therefore, Article 50a is ex post facto in appellant's case. *United States v. Lilly*, 25 M.J. 403, 406 (C.M.A.1988).

In order for pleas of guilty to be provident, the military judge must correctly advise the accused what the prosecution would be required to prove in the absence of a guilty plea. Substantial misadvice regarding who must prove what renders a plea of guilty improvident. *United States v. DeVore*, 46 C.M.R. 612 (A.C.M.R.1972).

In the appellant's case, the military judge had the burden of proof backwards. Instead of advising the appellant that the prosecution would be required to prove beyond a reasonable doubt that the appellant was sane, the military judge advised that the court would have to determine whether the appellant "lacked substantial capacity" to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law. The military judge advised the appellant that he would be acquitted "if this court were to find beyond a reasonable doubt that at the time of the alleged offenses you lacked the mental responsibility." When the military judge explained partial mental responsibility, he explained that the court would determine partial mental responsibility "even were a court not to believe beyond a reasonable doubt that you lacked mental responsibility at the time of the offense." We are not confronted with a mere slip of the tongue

in this case. The military judge twice referred to proof of "lack of substantial capacity" and twice referred to convincing a court beyond a reasonable doubt that the appellant lacked mental capacity. In other words, the military judge advised the appellant that he had the burden of proof to prove his lack of mental responsibility beyond a reasonable doubt. *DeVore* compels us to hold that the pleas of guilty are improvident.

In light of our holding that the appellant's pleas are improvident, we need not address the remaining assignment of error. We note however, that the appellate defense counsel, citing *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), states that he has been unable to establish an attorney-client relationship and that the appellant has been unable to personally assert any errors because of his severe mental disease. Rule for Courts–Martial, 1203(c)(5) prohibits this Court from affirming any findings of guilty or sentence while the appellant is mentally incompetent, but it does not prohibit us from setting aside his conviction.

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Chief Judge GRAY and Judge CREAN concur.