UNITED STATES, Appellee,

v.

Michael LILLY, Specialist Four, U.S. Army, Appellant.

No. 53,723.
CM 444919.

U.S. Court of Military Appeals.

Feb. 22, 1988.

For appellant: *Captain Lorraine Lee* (argued), *Lieutenant Colonel Paul J. Luedtke, Captain Bernard P. Ingold* (on brief); *Major Eric T. Franzen.*

For appellee: *Captain Samuel J. Rob* (argued), *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Lieutenant Colonel Gary F. Roberson* (on brief); *Colonel Norman G. Cooper.*

## Opinion of the Court

EVERETT, Chief Judge:

A general court-martial composed of officer and enlisted members found, contrary to appellant's pleas, that between February 20 and May 31, 1983, Lilly had committed offenses of rape, attempted rape, burglary, and indecent assault in violation of Articles 120, 80, 129, and 134 of the Uniform Code of Military Justice, 10 U.S.C. §§ 920, 880, 929, and 934, respectively. He was sentenced to a dishonorable discharge, confinement for 30 years, total forfeitures, and reduction to the lowest pay grade. The findings and sentence were approved by the convening authority.

Because of certain events which took place after trial, the Court of Military Review "ordered appellate review to be held in abeyance for 12 months." Unpub. op. at 2. Finally, more than 2 years after trial, the findings and sentence were affirmed. We granted review to consider these issues:

### I

WHETHER PARAGRAPH 124 OF THE 1969 MANUAL FOR COURTS-MARTIAL CONTROLS THE PROCEDURE IN THIS CASE FOR DISPOSING OF APPELLANT'S POST-TRIAL CLAIMS OF LACK OF MENTAL RESPONSIBILITY AND MENTAL CAPACITY.

### II

IF THE 1969 MANUAL DOES NOT CONTROL, WHAT PROCEDURE FOR DISPOSING OF ISSUES OF MENTAL RESPONSIBILITY AND CAPACITY ARISING POST-TRIAL IS CONTEMPLATED BY THE 1984 MANUAL FOR COURTS-MARTIAL?

### III

WHETHER THE COURT OF MILITARY REVIEW APPLIED A PROPER STANDARD IN DETERMINING WHETHER A REHEARING ON MENTAL RESPONSIBILITY AND CAPACITY SHOULD BE ORDERED.

### IV

IF A REHEARING WERE ORDERED AS TO MENTAL RESPONSIBILITY AND CAPACITY, WHAT PROCEDURE SHOULD BE FOLLOWED IN THE REHEARING?

### V

IF SUCH A REHEARING WERE ORDERED, SHOULD IT ALSO BE ORDERED AS TO SENTENCE IN THE EVENT THAT THE FACTFINDER RULES ADVERSELY TO THE ACCUSED?

### A

Prior to appellant's general court-martial, defense counsel requested that Lilly receive a psychiatric evaluation. The psychiatrist who conducted this evaluation concluded that appellant was both mentally responsible at the time of the offenses and competent to stand trial. Consequently, no issue of mental responsibility or of mental capacity was raised at trial by the defense. However, on July 23, 1983, only one day after his trial, Lilly escaped from guards transporting him to a confinement facility; and thereupon he allegedly committed an indecent assault upon a 14-year old German female. After his apprehension, appellant was charged with escape from custody, desertion, and attempted rape.

Pursuant to a request by the defense counsel detailed to represent him as to the later offenses, a civilian forensic psychiatrist, Doctor Bob Rollins, evaluated Lilly. The diagnosis was that he suffered from schizophrenia and that "[a]t the time of the crimes Pvt. Lilly was not responsible for his actions in that his mental illness caused him to lack substantial capacity to appreci-

ate the criminality of his conduct and to conform his behavior to the requirements of the law."

These conclusions were brought to the attention of the convening authority before he acted on the findings and sentence in appellant's case. However, after being advised by the staff judge advocate that "[t]he time to litigate the issue of mental responsibility in this case was at the time of trial" and that "[n]o further inquiry . . . is warranted," the convening authority proceeded to approve the findings and sentence.[1]

Subsequently, the convening authority ordered a further psychiatric evaluation of Lilly; and this was performed by Dr. Harold Hall, a psychologist, and Dr. Gilbert Eggen, a psychiatrist, at the Nuernberg Military Hospital. Dr. Hall determined that Lilly had a mixed personality disorder but was "fit to legally proceed." Dr. Eggen also diagnosed appellant as suffering from a "mixed personality disorder"; but he determined that Lilly had a "psychosexual disorder not elsewhere classified; manifested by compulsive inappropriate attempts at sexual intercourse with women." Dr. Eggen concluded that Lilly was mentally responsible for escaping and deserting after his trial but that, as to the charge of attempted rape after his escape, appellant lacked "substantial capacity to conform his conduct to the requirements of law" because "of mental disease or defect."

In light of the conclusions reached by Dr. Rollins and later by Dr. Eggen, trial counsel recommended to the convening authority that he withdraw the charges pending against Lilly with respect to the escape, desertion, and attempted rape that had followed his trial by general court-martial. Ultimately, these charges were withdrawn on January 17, 1984.

In view of these developments, appellate defense counsel asked the Court of Military Review to order a sanity evaluation of Lilly with respect to the offenses of which the

court-martial had found him guilty. Ultimately, a sanity board was convened at Fort Leavenworth; and, after considering the record of trial, various other documents, and interview and test results, the board unanimously concluded:

a. The appellant at the time of the alleged offenses appears to have lack[ed] substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.

b. The appellant at the time of his trial appears to have lack[ed] sufficient mental capacity to understand the nature of the proceedings against him and to conduct or cooperate intelligently in his defense.

c. The appellant at the present time lacks sufficient mental capacity to understand the nature of the proceedings and to conduct or cooperate intelligently in his defense.

According to the sanity board, Lilly—who then was undergoing psychiatric treatment—was suffering from "Atypical Psychosis" and a "Mixed Personality Disorder."

Several months later, on April 11, 1985, there was convened another sanity board, which consisted of three board-certified psychiatrists and a confinement social worker from a prison in Mannheim, Federal Republic of Germany, where appellant had been confined prior to trial. This board shared "unanimous sentiment" that, at the time of the alleged offenses, Lilly had been "free from mental disease, defect, or derangement" and was "able to appreciate the criminality of his conduct" and "to conform" it "to the requirements of the law." While the board found appellant to be suffering from "Atypical depressive disorder," it concluded that there was "no medical indication to inquire further into the appro-

---

1. It is not clear how the staff judge advocate's advice can be reconciled with provisions of paragraphs 121 and 124, Manual for Courts-Martial, United States, 1969 (Revised edition), which was then in effect. These paragraphs contemplate further inquiry by the convening authority if new information is received which raises a question of the accused's mental responsibility or mental capacity.

priateness of" appellant's mental responsibility.

### B

■ Lilly was convicted of offenses committed before the effective date of Manual for Courts-Martial, United States, 1984, and before the date when Article 50a, UCMJ, 10 U.S.C. § 850a, was added to the Uniform Code of Military Justice.[2] We need not concern ourselves with the statutory change, since the new Article 50a was intended to "apply only to offenses committed on or after the date of" enactment in November 1986. Equally irrelevant to Lilly's appeal are amendments to the 1984 Manual which the President promulgated to implement Article 50a. Executive Order 12484, 49 Fed. Reg. 28825 (1984), which promulgated the 1984 Manual, directed that it "shall take effect on August 1, 1984, with respect to all court-martial processes taken on and after that date"; but

> Rules for Courts-Martial 908, 1103(j), 1105–1107, 1110–1114, 1201, and 1203 shall not apply to any case in which the findings and sentence were adjudged by a court-martial before August 1, 1984, and the post-trial and appellate review of such cases shall be completed in accordance with applicable laws, Executive orders, and regulations in the same manner and with the same effect as if this Manual had not been prescribed.

**2.** Article 50a was added by Public Law No. 99–661, § 802(a)(1), 100 Stat. 3905 (1986).

**3.** Decades ago the Judge Advocate General of Army expressed this view:

> If an insane soldier be brought to trial by court-martial and ... [i]f the question of insanity in his case is not raised till after the proceedings have been acted upon, and the sentence has been approved, and it then appears that he was actually insane, the sentence should be remitted.

W. Winthrop, *A Digest of Opinions of the Judge Advocates General of the Army* 453–54 (1895). Also, Colonel Winthrop commented in his textbook:

> *Action where the accused is insane or imbecile.* Here should be noticed the action to be taken in cases in which the accused is found by the court, or deemed by the reviewing authority himself, to have been at the time of the of-

Thus, the 1984 Manual does not apply to the issues now before us, all of which concern "post-trial and appellate review of" offenses committed long before August 1, 1984. We must turn for guidance to the provisions of the Manual for Courts-Martial, United States, 1969 (Revised edition).

From early times, "military law [has] accord[ed] a 'preferred rating' to questions affecting the accused's sanity." *See United States v. Norton,* 22 U.S.C.M.A. 213, 218, 46 C.M.R. 213, 218 (1973); *United States v. Burns,* 2 U.S.C.M.A. 400, 405, 9 C.M.R. 30, 35 (1953).[3] Consistent with the preferred treatment military law granted to questions about the accused's sanity, paragraph 124 of the 1969 Manual authorized consideration of the issue of the accused's sanity during "appellate review regardless of whether it was determined at trial against the accused." *United States v. Triplett,* 21 U.S.C.M.A. 497, 499, 45 C.M.R. 271, 273 (1972). Presumably, reviewing authorities were acting pursuant to this Manual provision when they convened sanity boards to determine Lilly's mental responsibility and mental capacity.

■ Under paragraph 122a of the 1969 Manual, the Government was required to prove beyond a reasonable doubt both the accused's mental responsibility and his mental capacity.[4] As to mental capacity, the Manual allowed the military judge to make the final determination and did not

> fence or the trial, or to be at the time of the review, mentally deranged or otherwise irresponsible. When the accused was apparently insane ... at the commission of the offence, and the court, notwithstanding, have sentenced him, the reviewing officer will properly *disapprove* the sentence.

W. Winthrop, *Military Law and Precedents* 453–54 (2d ed. 1920 Reprint).

**4.** Under the 1984 Manual, mental capacity can be established by preponderance of the evidence (R.C.M. 909(c)(2)); but the Government still was required to prove mental responsibility beyond a reasonable doubt. (R.C.M. 916(k)(3)(A), Discussion). Article 50a(b) of the Uniform Code, which took effect on November 14, 1986, requires an accused to demonstrate "by clear and convincing evidence" that he is not mentally responsible.

require consideration by the court members. Para. 122*b* (3). Likewise, an issue of mental capacity which arose after trial could finally be determined by the Court of Military Review. *See United States v. Roberts*, 18 M.J. 192, 195 (C.M.A.1984) (Everett, C.J., concurring in the result).

The 1969 Manual entrusted determination of mental responsibility to the members of the court-martial or, if the accused elected trial by military judge alone, then to the judge. Para. 122*b* (4). However, unlike mental capacity, the issue of mental responsibility could not be finally determined by reviewing authorities. Instead, paragraph 124 provided that "the affected charges and specifications may be dismissed and appropriate action taken on the sentence or a new trial or rehearing may be directed, as may be appropriate under the circumstances of the case." This Manual language was interpreted by the Court in *United States v. Triplett, supra* at 502, 503, 45 C.M.R. at 276, 277, where it was noted:

> Paragraph 124 of the Manual authorizes consideration of post-conviction information "in the interest of justice." The actions it sanctions demand an analysis of the content, and a weighing of the value, of the new information. Manifestly, consideration of content and weight is required to determine whether, on "the record as a whole," a "reasonable doubt exists" as to the sanity of the accused at the time of the offense. Similar consideration of content and weight is required to determine whether the new matter is merely cumulative of that considered at trial, which obviously would not, in the interest of justice, require a rehearing.

> \*   \*   \*   \*   \*   \*

As we construe the language and purpose of paragraph 124, it does not command a rehearing on the mere presentation of new information as to the accused's mental responsibility for the offense. All matter pertaining to the accused's sanity must be evaluated by the appellate tribunal. The nature of the evaluation depends upon *whether the* new matter is before the appellate tribunal as evidence supplementing the evidence of record or whether it is before the tribunal only for "the limited purpose of determining if the issue [of sanity] was raised" so as to require further proceedings. *United States v. Roland, supra,* [9 U.S.C.M.A. 401] page 404 [26 C.M.R. 181, 184 (1958)]; *United States v. Thomas, supra* [13 U.S.C.M.A. 163, 32 C.M.R. 163 (1962)].

If on the record, as a whole, the tribunal concludes "that a reasonable doubt exists as to the sanity of the accused," it should set aside the findings of guilty and dismiss the charge. [1969] Manual, supra, paragraph 124, page 24–6. Conversely, if the tribunal determines that the total evidence casts no doubt on the accused's mental capability at the time of the offense, it can properly affirm the findings of guilty. Between these extremes is a gray area. In that area, reasonable minds might differ as to the meaning and weight of the new and old matter. Certainly disputed facts and opinions can better be tested in the crucible of examination at trial, but the mere existence of conflicting opinion does not necessarily require a rehearing. See United *States v. Wimberley, supra* [16 U.S.C.M.A. 3, 36 C.M.R. 159 (1966)]. Still to be determined is whether, considering all the matter on the issue, a different verdict might reasonably result if the issue was again presented to a court-martial. Obviously, an affirmative answer to that question would impel a rehearing.

In its opinion in this case, the Court of Military Review stated:

> We believe appellant was mentally responsible and was not at the time of the offenses, as a result of mental disease or defect, incapable of comprehending the criminality of his conduct.

Unpub. op. at 3. They also remarked that, although aware of the inconsistency of the subsequent reports, we are convinced by the later evaluations which affirm the pretrial diagnosis as to the mental responsibility of the appellant. Therefore,

we find that appellant was mentally responsible and capable of appreciating the criminality of his conduct at the time of the commission of the offenses.

*Id.* at 4.

■ We conclude that the Court of Military Review erred in its application of the standard appropriate for an issue of mental responsibility which has been raised initially after trial. Although allowing the Court of Military Review some leeway in weighing the evidence, *Triplett* contemplates that a court-martial should decide whether an accused is mentally responsible after a substantial issue has been raised by new evidence not cumulative of that presented at trial. *See United States v. King*, 24 M.J. 774 (A.C.M.R.1987).

In appellant's case, four experts in the field of mental health have concluded on some occasion that, at the time of the offenses of which he was convicted, Lilly lacked sufficient capacity to conform his conduct to the requirements of law or to appreciate the criminality of his conduct. The Court of Military Review was required by paragraph 124 of the 1969 Manual to determine whether this new evidence—not available at the time of trial—might persuade a factfinder to acquit if a rehearing were now to take place at the trial level. In other words, is it foreseeable that, in the event of a rehearing, the factfinder, after considering all the evidence that would be available, might have a reasonable doubt as to appellant's mental responsibility? Instead of determining this limited issue, the court below made its own determination of the ultimate issue of Lilly's mental responsibility.

■ As has already been noted, the issue of mental responsibility is treated differently during appellate review from the issue of mental capacity. As to mental capacity, paragraph 124 authorized the Court of Military Review to make a final ruling in the course of appellate review. If, as to this issue, the Court of Military Review

makes its own determination adverse to the accused, he will not be entitled to a rehearing thereon at the trial level.

The Court of Military Review found

that appellant, at the time of his trial, was capable of understanding those proceedings and intelligently cooperating in his defense. In addition to the psychological evaluations of the appellant, his coherent responses to the military judge's Article 39(a), UCMJ, remarks and explanations, and his demeanor during his unsworn pre-sentencing statement convince us that he was mentally responsible at the time of the court-martial.

Unpub. op. at 4.

This finding is somewhat inartful since the word "responsible" is best applied only to an accused's mental condition at the time of the alleged offenses. Nonetheless, there can be no doubt that the Court of Military Review found that Lilly possessed mental capacity to defend himself when he was tried. Moreover, since the Court of Military Review apparently was applying the 1969 Manual—even though its Memorandum Opinion was rendered on August 21, 1985—it seems safe to assume that, in finding Lilly had mental capacity, the court below properly used the standard of proof of beyond a reasonable doubt, rather than that of by a preponderance of the evidence. Accordingly, to whatever extent Lilly's mental capacity at the time of his trial on July 1, 1983, may be material if there should be a rehearing, that issue already has been finally resolved against him.

■ If a rehearing as to mental responsibility becomes necessary, it can take place only if Lilly possesses the mental capacity to stand trial when that rehearing commences. If, then, appellant were to contest his mental capacity to participate in his own defense at the rehearing, the issue would have to be determined by the military judge who presides over the rehearing.[5]

---

5. According to Executive Order 12484, which promulgated the 1984 Manual, the Rules for Courts-Martial will apply to future trials but not to appellate review of cases already tried prior to the effective date of the Manual. It is arguable that the burden of proof on the issue of

Paragraph 123 of the 1969 Manual recognized that "any evidence with respect to the mental condition of the accused which falls short of creating a reasonable doubt as to his sanity" may nonetheless be relevant in determining an appropriate sentence. For example, "a mental and neurological condition" which diminishes the "ability to adhere to the right ... may be a mitigating factor"; and so it must be considered in sentencing.

■ Often a rehearing on sentence will take place without a rehearing on findings. However, a rehearing on findings of guilty—even if resulting in the same findings that were originally reached—does not preclude a rehearing on sentence. The ultimate objective of sentencing is to adjudge the sentence most appropriate for the accused and his crimes. If, during a rehearing on findings, evidence as to the accused's mental condition is received—evidence which under paragraph 123 of the 1969 Manual is relevant to sentence—the court-martial should be allowed to adjudge a new sentence, which takes into account information that was not available at the original trial.

The argument to the contrary is that, since the Government is not permitted to seek a higher sentence than was adjudged at the original trial, *see* Art. 63, UCMJ, 10 U.S.C. § 863 (1956), the accused should not be given an opportunity to improve his position. This argument, however, is outweighed by the desirability of having the sentence reflect all relevant information available at the time of sentencing.

### C

The decision of the United States Army Court of Military Review is set aside. The record of trial is returned to the Judge Advocate General of the Army for remand to that court for further proceedings consistent with this opinion.

Judge SULLIVAN concurs.

mental capacity at the time of the rehearing should be the new standard of preponderance of the evidence—a standard employed by the 1984 Manual—rather than the standard of proof be-

COX, Judge (concurring):

In *United States v. Triplett*, 21 U.S.C.M.A. 497, 45 C.M.R. 271 (1972), we interpreted rules for reviewing post-trial claims of lack of mental capacity and responsibility. Although the majority opinion here quotes *Triplett* extensively, it is not clear how it is to be applied. As I read *Triplett*, in order for an appellate tribunal to consider an issue of mental responsibility raised after a court-martial has adjourned, one must follow the same procedures used to gain consideration of any other motion for new trial based on evidence discovered after trial, with two notable exceptions. First, a review court may dismiss the charges if it finds that reasonable doubt exists about appellant's sanity at the time the offense was committed. Second, the requirement that "due diligence" be exercised in discovering the evidence prior to trial is relaxed.

In *Triplett*, this Court was called upon to construe the crucial phrase, "raises an issue concerning mental responsibility at the time of the offense," in paragraph 124, Manual for Courts-Martial, United States, 1969 (Revised edition). 21 U.S.C.M.A. at 502, 45 C.M.R. at 276. The complete sentence in paragraph 124 from which that phrase was drawn is now germane:

> When further inquiry after trial produces new *information which raises an issue* concerning mental responsibility at the time of the offense, the affected charges and specifications may be dismissed and appropriate action taken on the sentence or a new trial or rehearing may be directed, *as may be appropriate under the circumstances of the case.*

(Emphasis added.)

The question is whether the language, "information which raises an issue," establishes some special standard for resolving mental-responsibility questions. The "in-is-

yond a reasonable doubt—which was employed in the 1969 Manual. This issue has not been specifically argued on this appeal, and, since it may not arise, we need not decide it at this time.

sue" threshold in other contexts, such as for the purpose of obtaining an instruction on a defense theory, is quite low, *e.g., United States v. Tucker,* 17 U.S.C.M.A. 551, 554–55, 38 C.M.R. 349, 352–53 (1968). The logical consequence of concluding that paragraph 124 establishes such a test is, once *some evidence* of insanity is presented, a review court *must* either dismiss, order a new trial, or order a rehearing. It would be silly, indeed, under the facts presented here, to suggest there was no evidence that would call appellant's sanity into question. Consequently, if the test discussed above had been applied, the Court of Military Review would have been *required* to select one of the approved remedies—of which affirmance was not one.

In *Triplett,* however, we rejected such a selective reading of paragraph 124. To the contrary, we interpreted the paragraph to mean that the belated receipt of insanity evidence presented the review court with these three options:

> First, the language
>
> does not command a rehearing on the mere presentation of new information... If on the record, as a whole, the tribunal concludes "that a reasonable doubt exists as to the sanity of the accused," it should set aside the findings of guilty and dismiss the charge.

*Id.* at 503, 45 C.M.R. at 277, *quoting* paragraph 124, Manual, *supra.*

> Second and
>
> [c]onversely, if the tribunal determines that the total evidence casts no doubt on the accused's mental capability at the time of the offense, it can properly affirm the findings.

*Id.*

> Third,
>
> [b]etween these extremes is a gray area. In that area, reasonable minds might dif-

fer as to the meaning and weight of the new and old matter... [B]ut the mere existence of conflicting opinion does not necessarily require a rehearing.

*Id.*

Lest there be any doubt as to our meaning, we supplied the "gray-area" test, *viz.*:

> Still to be determined is whether, considering all the matter on the issue, a different verdict might reasonably result if the issue was again presented to a court-martial.

*Id.* (emphasis added). *Cf.* para. 109*d* (2), *Newly discovered evidence,* Manual, *supra.* \*

In other words, the inartful issue-raising language did not establish unique standards or procedures for handling mental responsibility claims. The Manual's standards for dismissal (para. 74*a* (3)), new trial (para. 109*d* ), and rehearing (para. 92*a* ), remain intact and are to be employed *"as may be appropriate under the circumstances of the case."* Para. 124, Manual, *supra.*

I agree that it is appropriate to remand the case to the Court of Military Review with the mandate that it review the entire record and answer this question:

> Might a different verdict (or sentence) reasonably result if the new evidence is presented to a court-martial?

If the answer is *no,* the court may reaffirm the conviction and the sentence. If the answer is *yes,* a rehearing may be ordered. But if the evidence rises to such a level that a reasonable doubt emerges as to appellant's sanity at the time of the offense, then the charges should be dismissed.

On this basis, I join Chief Judge EVERETT in remanding the case to the Court of Military Review.

---

\* Paragraph 109*d* (2), Manual for Courts-Martial, United States, 1969 (Revised edition), provides:

> A new trial will not be granted on the grounds of newly discovered evidence unless the petition shows:
> (a) That the evidence is in fact newly discovered, that is, discovered since the trial;
> (b) That the evidence is not such that it would have been discovered by the petitioner at the time of trial in the exercise of due diligence;
> (c) That the newly discovered evidence, if considered by a court-martial in the light of all other pertinent evidence, *would probably produce a substantially more favorable result for the accused.*

(Emphasis added.)