UNITED STATES

v.

**Airman First Class Eric R. MASSEY, FR 337–66–3117, United States Air Force.**

**ACM S27697.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 30 Nov. 1987.

Decided 17 May 1988.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Major William J. Reichart.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni, Captain Jeffrey H. Curtis and Major Mark C. Ramsey, USAFR.

Before SESSOMS, LEWIS and BLOMMERS, Appellate Military Judges.

## DECISION

SESSOMS, Senior Judge:

The appellant had been summoned to his first sergeant's office to receive notice of his commander's intent to vacate the suspension of a reduction which had been imposed by a prior nonjudicial punishment action. During the reading of the notification he became boisterous, used disrespectful language, took a swing at the first sergeant, threatened him with bodily harm, and refused to obey his order to stand at attention while the notification was being read. Despite his pleas, the appellant was convicted of assault, willful disobedience of an order, disrespect, and the wrongful communication of a threat to a noncommissioned officer. The military judge imposed a sentence which included a bad conduct discharge, confinement for two (2) months, and reduction to airman basic.

The appellant was involuntarily taken by the police to a hospital psychiatric unit in Pensacola, Florida during September 1986, several months before he entered the Air Force. The initial report issued by the hospital indicates that he had been acting in a strange and irrational way. He had complained of neighbors spying on him with electronic devices, he had become violent with a child, and he had been hearing strange voices, as well as experiencing other types of unusual phenomena. His mother had become afraid that he was losing touch with reality and wanted him admitted to the psychiatric unit for observation. In the same report his mental status is de-scribed as being coherent, his mood as neutral, and his affect as being appropriate. The examining physician found no impairment to his thought processes. Nevertheless, the hospital authorities deemed it appropriate to refer him to a Crisis Stabilization Unit (CSU) for a one-to-three week program of observation and treatment. His regimen was to include daily visits with a psychiatrist to review his medication requirements and individual counseling with a masters-level counselor one hour per week. He was admitted to the CSU with a diagnosis of "schizophreniform disorder." For reasons known only to him, he chose not to complete the program.

In April of 1987 Airman First Class Massey enlisted in the Air Force. Within a few months his antisocial behavior had gotten him into trouble with his supervisors. In fact, his conduct had prompted his commander to refer him to the Lowry Air Force Base medical facility for a mental examination. The clinical psychologist who conducted the evaluation made a finding of "no diagnosis," and returned him to duty without any "psychological restrictions." After the charges (which formed the basis for this court-martial) were initiated, his military defense counsel requested a new evaluation. This request was denied by the Chief Circuit Judge. The judge based his decision on the allied documents submitted with the evaluation request. He specifically referred to the fact that the clinical psychologist, who had seen him only a few weeks prior, found "no evidence of psychological deficits." The mental health issue was not raised at trial.

After he served his confinement and returned home on appellate leave, Airman Massey returned for treatment to the civilian CSU he had consulted prior to his entry into the Air Force. He now presents to this court, in a *Grostefon* [1] submission, a psychiatric report from that facility which indicates that he suffers from paranoid schizophrenia. His appellate counsel asks this Court to order a *DuBay* [2] hearing to

---

1. *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982).

2. *United States v. Dubay,* 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

assess his mental condition at the time of the offenses, the time of the trial, and during the appellate process.[3]

The offenses of which the appellant stands convicted occurred after November 14, 1986, the effective date of Article 50a, U.C.M.J., 10 U.S.C. § 850a. All persons tried for offenses committed after that date are presumed to be mentally responsible. This presumption continues until the accused establishes, by clear and convincing evidence, that he was not mentally responsible at the time of the alleged offense. R.C.M. 916(k)(3)(A). In this case no effort was made during the trial to show that he was not mentally responsible or that he lacked mental capacity.

Under the present standard the trial, and by inference the appellate process, may proceed unless it is established by a preponderance of the evidence that the accused is suffering from a disease or defect rendering him mentally incompetent to understand the nature of the proceedings against him or to conduct or cooperate intelligently in the defense of the case. R.C.M. 909(c)(2). The discussion which follows this rule makes it clear that additional mental examinations may be conducted at any stage of the proceedings as circumstances may require. *See also* R.C.M. 706(c)(4).

The latest opinion of the Court of Military Appeals on the question of capacity first raised subsequent to trial is that found in *United States v. Lilly*, 25 M.J. 403 (C.M.A.1988). In *Lilly*, as in the instant case, the defense requested a mental evaluation prior to trial. The accused was examined by a psychiatrist and found to be mentally responsible at the time of the offenses and competent to stand trial. As in this case, defense counsel did not raise insanity as an issue.

A majority of the judges on the Court of Military Appeals were apparently convinced that there was sufficient evidence produced subsequent to trial to create substantial doubt as to whether the appellant was mentally responsible when he committed the offenses, or that he had the capacity to understand the nature of the proceedings and to cooperate in his own defense. They therefore set aside the opinion of the lower appellate court and remanded the case for its additional consideration. *Lilly*, at 409. Judge Cox, in a concurring opinion, agreed that the case should be remanded to the Court of Military Review to answer the question: "Might a different verdict (or sentence) result if the new evidence is presented to a court-martial?" Judge Cox believed that there were three possible results of reconsideration by the lower court. If they found that the answer to the stated question was *no*, the court could reaffirm the conviction and sentence. If the answer to the question was *yes*, a rehearing could be ordered. The third alternative, available under the previous rules regarding insanity issues, was that if a reasonable doubt should arise as to the appellant's sanity the charges should be dismissed.

We find ourselves facing much the same dilemma that the Army Court of Military Review confronted in *Lilly* and our court faced in *United States v. Bledsoe*, 16 M.J. 977 (A.F.C.M.R.1983). The accused was evaluated by a psychologist prior to trial and found to have no "thought disorder." The issue was not raised at trial. We now receive a diagnosis rendered approximately six weeks after trial which indicates that the appellant is suffering from paranoid schizophrenia. A diagnosis of this severity might well cast doubt upon the outcome of the trial if this evidence were available to the court-martial. We therefore believe that this posttrial diagnosis creates sufficient doubt to warrant further inquiry into the appellant's mental capacity. We are thus required to take remedial action. Should we set aside the findings and sentence and permit a rehearing as Judge Cox suggested in *Lilly?* Should we order a sanity board as provided for in our internal rules? Internal Rule 8–3b. Should we order a *DuBay* hearing as requested by ap-

---

**3.** Except for those materials which obviously do not pertain to this appellant, the motion to file documents is granted.

pellant? Or should we set aside the action as this Court did in *United States v. Bledsoe, supra.* The facts and circumstances of this case convince us that the latter would be more appropriate.

The convening authority may institute a further sanity inquiry consistent with this decision. Any additional sanity proceeding will specifically review the appellant's mental capacity as it relates to the appellate process. Should the inquiry establish that the appellant did not possess the requisite capacity at the time of trial or cast doubt upon his mental responsibility when committing the offenses a rehearing should be ordered.

If a further sanity inquiry is not feasible, or if upon completion of the inquiry the convening authority is satisfied that the accused lacks, or lacked, capacity or responsibility, or for any other reason the prosecution should be terminated, the convening authority may dismiss the charges and specifications.

The action of the convening authority is set aside and the record of trial is returned to The Judge Advocate General for return to the convening authority for further proceedings consistent with this opinion.

Judge LEWIS and Judge BLOMMERS concur.

**UNITED STATES**

v.

**Airman Kenneth B. CANNON, FR 362–86–0755, United States Air Force.**

**ACM S27730.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 19 Nov. 1987.

Decided 18 May 1988.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Captain Mark R. Land.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Lieutenant Colonel Barret E. Kean, USAFR.

Before HODGSON, FORAY and HOLTE, Appellate Military Judges.