UNITED STATES, Appellant,

v.

Todd A. DOCK, Private First Class,
U.S. Army, Appellee.

No. 60,309.

CM 446898.

U.S. Court of Military Appeals.

May 8, 1989.

For the United States: *Captain Donald W. Hitzeman* (argued); *Colonel Norman G. Cooper* and *Lieutenant Colonel Gary F. Roberson* (on brief).

For the Accused: *William Gray Schaffer, Esq.* (argued); *Morris B. Abram, Esq., Douglas G. Morris, Esq., William J. Holmes, Esq., Captain Keith W. Sickendick* (on brief).

*Opinion of the Court*

COX, Judge:

This death penalty case is before us pursuant to Article 67(b)(2), Uniform Code of Military Justice, 10 USC § 867(b)(2), upon a certificate from the Judge Advocate General of the Army for review of the following issues:

I

WHETHER THE ARMY COURT OF MILITARY REVIEW ERRED IN HOLDING THAT ARTICLE 45(B), UCMJ, [10 USC § 845(B)] WAS VIOLATED BY RECEIPT OF PFC DOCK'S PLEAS OF GUILTY TO ROBBERY AND UNPREMEDITATED MURDER.

II

WHETHER THE ARMY COURT OF MILITARY REVIEW ERRED BY APPLYING AN "EVIDENCE SUFFICIENT TO REQUIRE AN INSTRUCTION" STANDARD AS A MATTER OF LAW IN DETERMINING WHETHER THE ISSUE OF INSANITY HAD BEEN SUFFICIENTLY RAISED POST–TRIAL.

It is not disputed that on the night of June 11, 1984, Private First Class Dock

attempted to rob a German taxi driver.[1] The driver resisted, and lost both his life and his money. The evidence shows that he was stabbed numerous times.

Private First Class Dock was charged with committing premeditated murder while perpetrating robbery; hence, the charge encompassed both premeditated murder and felony murder. He was also separately charged with robbery. Before a court-martial composed of officer and enlisted members, he pleaded guilty to unpremeditated murder and to robbery, violations of Articles 118 and 122, UCMJ, 10 USC §§ 918 and 922, respectively. He was found guilty of premeditated murder while perpetrating robbery, as charged in the specification of Charge I. After the members unanimously found two aggravating factors and that the aggravation "substantially outweigh[ed]" mitigation, he was sentenced to a dishonorable discharge, total forfeitures, reduction to the grade of Private E-1, and to be put to death. The United States Army Court of Military Review, sitting *en banc*, set aside the findings of guilty and the sentence on the ground that accused's guilty pleas violated Article 45(b), and authorized a rehearing. 26 MJ 620 (1988). We hold that the Court of Military Review did not err in its ruling.

The Government's theory of the case was that Dock set out to rob a German taxicab driver, using a knife, and that he planned to kill him in order to leave no witnesses. By his pleas, Dock admitted -

(1) that he killed the cab driver;

(2) that he attempted to rob him and ultimately did (by finding and taking the victim's wallet from the cab after he had pulled the stricken driver from the cab); and

(3) that he had intended to inflict great bodily harm on the driver in order to take his money. From this we conclude that the only logical inference to be drawn is that he killed the cab driver in the course of attempting to perpetrate the robbery.

The defense basically was to contest the element of premeditation. There was no particular defense to the causal link between the robbery and the murder, despite the fact that felony murder is equally a capital offense. *See* Art. 118.

Paragraph 70*a*, Manual for Courts-Martial, United States, 1969 (Revised edition), states:

A plea of guilty by the accused may not be received to any charge or specification alleging an offense for which the death penalty may be adjudged (Art. 45(b); see [para.] 15*a* (3)), but a plea of guilty may be received as to a non-capital offense which is necessarily included in a capital offense alleged.

■ The issue is whether the Government could have rested its case and proved capital felony murder based solely on the accused's pleas to the two noncapital offenses, *i.e.*, unpremeditated murder and robbery. In other words, whether

as to the offense to which the plea of guilty relates, the plea admits every element charged and every act or omission alleged and authorizes conviction of the offense without further proof[.]

Para. 70*b* (2), Manual, *supra.*

Paragraph 197*e* of the Manual sets forth the following felony-murder rule:

A homicide committed during the ... attempted perpetration of ... robbery ... also constitutes murder, and it is immaterial that the slaying may be unintentional or even accidental.

As the military judge informed the accused, "with regard to felony murder, ... to which you have pleaded not guilty ... the court would have to find ... a causal connection between the commission of robbery and the act which caused the victim's death." *See generally United States v. Jefferson*, 22 MJ 315 (CMA 1986).

By his pleas, Dock admitted to murdering Claus Engelhardt by "personally stab-

---

**1.** This case is governed by the Manual for Courts-Martial, United States, 1969 (Revised edition).

bing him with a knife; ..." He also admitted that "by means of force and violence" he stole "from the possession and in the presence of Claus Engelhardt ... a wallet and Deutsche Marks ... of a value of about $250." There was no evidence that the force and violence was other than the act of "personally stabbing him with a knife." As the Court of Military Review properly opined, citing *United States v. McFarlane*, 8 USCMA 96, 23 CMR 320 (1957), "[I]t is not just the pleas that are looked to but the 'four corners' of the record to see if, 'for all practical purposes,' the accused pled guilty to a capital offense." We agree with the Court of Military Review

> that appellant's pleas, taken within the context of this case, constituted a plea of guilty to felony murder, a capital offense. As such they were taken in violation of Article 45(b), ... and should have been rejected as required by Article 45(a), UCMJ.

26 MJ at 623.

▪ Turning to the second certified issue and the standard the Court of Military Review applied in determining whether the issue of insanity was adequately raised in this case post-trial, we note that the opinion below evidences some confusion concerning this standard. The standard was articulated in *United States v. Triplett*, 21 USCMA 497, 503, 45 CMR 271, 277 (1972), and reiterated in *United States v. Lilly*, 25 MJ 403, 407 (CMA 1988), in this much-quoted language:

> If on the record, as a whole, the tribunal concludes "that a reasonable doubt exists as to the sanity of the accused," it should set aside the findings of guilty and dismiss the charge. [1969] Manual, *supra*, paragraph 124, page 24–6. Conversely, if the tribunal determines that the total evidence casts no doubt on the accused's mental capability at the time of the offense, it can properly affirm the findings of guilty. Between these extremes is a gray area. In that area, reasonable minds might differ as to the meaning and weight of the new and old matter. Cer-

tainly disputed facts and opinions can better be tested in the crucible of examination at trial, but the mere existence of conflicting opinion does not necessarily require a rehearing. *See United States v. Wimberley, supra* [16 USCMA 3, 36 CMR 159 (1966) ]. Still to be determined is *whether, considering all the matter on the issue, a different verdict might reasonably result if the issue was again presented to a court-martial.* Obviously, an affirmative answer to that question would impel a rehearing.

(Emphasis added).

My concurring opinion in *Lilly* did not depart from this test. Rather, I reiterated the test which Chief Judge Everett quoted from *Triplett* in his majority opinion:

> Lest there be any doubt as to our meaning, we supplied the "gray-area" test, *viz:*
>> Still to be determined is *whether, considering all the matter on the issue, a different verdict might reasonably result if the issue was again presented to a court-martial.*

*Id.* at 410.

In the *Lilly* opinion, Chief Judge Everett expounded on the test, stating:

> The Court of Military Review ... [is] required by paragraph 124 of the 1969 Manual to determine whether this new evidence—not available at the time of trial—might persuade a factfinder to acquit if a rehearing were now to take place at the trial level. In other words, is it foreseeable that, in the event of a rehearing, the factfinder, after considering all the evidence that would be available, might have a reasonable doubt as to appellant's mental responsibility? Instead of determining this limited issue, the court below made its own determination of the ultimate issue of Lilly's mental responsibility.

*Id.* at 408. However, in expounding on the test, he did not create a new one. The question of "whether ... a different verdict might reasonably result" is not different from asking whether a factfinder "might have a reasonable doubt" after hearing the evidence. After all, if the fact-

finder has a reasonable doubt after hearing the new evidence, he must acquit. That would be a different verdict.

Apparently, much of the confusion on this issue stems from use of the word "might." The word "might" is defined as indicating "a possibility or probability that is weaker than may." The word "may" is then defined as "indicat[ing] a certain measure of likelihood or possibility." *See The American Heritage Dictionary* 795 and 774 (2d College ed.1982). To avoid the confusion inherent in the use of the word "might," we could liken the test to the harmless-error analysis discussed in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Another way of asking the question would be:

Is the appellate court convinced beyond a reasonable doubt that a different result would not obtain if the trier of fact had this new evidence before it?

If it is not so convinced, the accused is entitled to present his evidence before a court-martial.

Regardless of semantics, it is clear that the Court of Military Review placed the evidence in this case into the gray area and properly authorized a rehearing.[2]

Accordingly, both certified issues are answered in the negative.

The decision of the United States Army Court of Military Review setting aside the findings of guilty and the sentence and authorizing a rehearing is affirmed.

Chief Judge EVERETT, and Judge SULLIVAN, concur.

**2.** Interestingly, resolution of either issue in favor of the accused entitles him to a rehearing. The question of his mental responsibility should be litigated regardless of the reason for the new hearing.