UNITED STATES, Appellee,

v.

**Larry G. VAN TASSEL, Sergeant U.S. Marine Corps, Appellant.**

No. 67,823.
CMR No. 88–1862.

U.S. Court of Military Appeals.

Argued April 6, 1993.
Decided Sept. 28, 1993.

For Appellant: *Kevin J. Barry* (argued); *Lieutenant Michael C. Pallesen*, JAGC, USNR (on brief); *Major Joseph B. Gilbert*, USMC and *Lieutenant Peter Van Hartesveldt*, JAGC, USNR.

For Appellee: *Major Laura L. Scudder*, USMC (argued); *Colonel T. G. Hess*, USMC (on brief).

*Opinion of the Court*

WISS, Judge:

A general court-martial, composed of a military judge sitting alone, convicted appellant, over his not-guilty pleas, of distributing one ounce of cocaine, robbing another servicemember of $70.00, and unlawful entry, in violation of Articles 112a, 122, and 134, Uniform Code of Military Justice, 10

USC §§ 912a, 922, and 934, respectively. Thereafter, the judge sentenced appellant to a dishonorable discharge, confinement for 4½ years, total forfeitures, and reduction to the lowest enlisted grade. On February 23, 1988, the convening authority approved these results.

While his appeal was pending before the Court of Military Review, appellant petitioned the Judge Advocate General for a new trial, offering newly discovered evidence concerning his mental responsibility for the offenses and his mental capacity to have stood trial. The Judge Advocate General forwarded appellant's petition to the Court of Military Review for consideration. *See* Art. 73, UCMJ, 10 USC § 873. In due course, the court denied appellant's petition (May 24, 1991) and affirmed the findings and sentence (November 25, 1991).

In this Court, appellant urges that the Court of Military Review abused its discretion when it denied his petition for a new trial. *See United States v. Cosner*, 35 MJ 278, 281 (CMA 1992). We agree.

I

Prior to his trial, appellant was examined by a sanity board under RCM 706, Manual for Courts-Martial, United States, 1984. In a report dated March 11, 1987, this one-psychiatrist board, *see* RCM 706(c)(1), concluded that appellant was both mentally responsible at the time of his offenses and mentally capable to participate in his trial. The question of appellant's sanity, either at the time of the offenses or at the time of trial, was not litigated at his court-martial.

■ Appellant's bizarre behavior, which had triggered the RCM 706 inquiry, contin-

ued after trial, resulting in a series of subsequent mental evaluations and reports.[1] Indeed, on January 18, 1989, the Court of Military Review stayed appellate proceedings in this case due to appellant's lack of capacity to participate in them. *See* RCM 1203(c)(5). The court rescinded its stay on November 30, 1990, only after a three-psychiatrist sanity board at Bethesda Naval Hospital had found, on July 13, 1990, that appellant had returned to competency.

Appellant's petition for a new trial was filed on March 15, 1991, and was supported primarily by an affidavit dated October 5, 1990, signed by Drs. Auvil and Cheney—two of the three Navy psychiatrists who had comprised the sanity board at Bethesda Naval Hospital. In this affidavit, the two doctors indicated that, after reviewing appellant's entire medical history and the report of the original pretrial RCM 706 board, they had concluded that appellant had suffered from a severe mental disease at the time of his trial, that resultantly he had lacked the mental capacity to understand those proceedings, and that "it is very probable that he suffered from a mental disease at the time of the alleged offenses."

Then, on May 19, 1992, this Court granted appellant's motion to file two documents signed in March 1992 by Dr. Martha Tymeson, an Air Force Major who is Director of Outpatient Mental Health at USAF Medical Center, Wright–Patterson Air Force Base, Ohio, and who more recently has treated appellant now that he is on appellate leave after serving his confinement. Dr. Tymeson's documents and the strong medical conclusions and discussion in them, however, were not before the Court of Military

---

1. Although some of these documents report in terms of "disorder," in many instances it is clear that they reflect medical diagnoses of appellant with maladies that, in legal impact, would seem to be "diseases." Without belaboring the point, we pause here simply to observe that it is the quality of the malady, not whether law and medicine attach the same label to it, that is significant. *See United States v. Benedict*, 27 MJ 253, 259 (CMA 1988). Litigation of an issue of mental capacity or responsibility focuses on the mental state of the accused, not on the compara-

tive jargon of the medical and legal professions. The question—simply stated but not so simply answered—is whether the *medical diagnosis* of an accused constitutes a malady that the *law labels* "a severe mental disease or defect." *Compare* Art. 50a, Uniform Code of Military Justice, 10 USC § 850a, and *United States v. Cortes–Crespo*, 13 MJ 420, 422 (CMA 1982), *with* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at xxii-xxv, (3d revised ed., 1987)(DSM–III–R).

Review as part of appellant's petition for new trial. In fact, we granted appellant's motion to file these documents pursuant to consideration of his then-pending motion to appoint a guardian *ad litem* for him—a motion that we ultimately denied on September 14, 1992.

## II

Preliminarily, we address three matters that impact on appellant's pursuit of a new trial. First, the Government urges us to hold that appellant's petition for new trial was untimely filed. The Government points out that Article 73 requires a petitioner to file a petition for new trial "within two years after approval by the convening authority of a court-martial sentence...." The date on which appellant filed his petition—March 15, 1991—was nearly 37 months after the date on which the convening authority had acted on his court-martial—February 23, 1988.[2]

The Government's ill-conceived argument ignores the fact that, for over 22 of those nearly 37 months, the Court of Military Review stayed the legal proceedings due to medical findings that appellant lacked the capacity to participate in them. Close to 40 years ago, this Court wrote:

> As we remarked in [*United States v.*] *Washington*, [6 USCMA 114, 19 CMR 240 (1955),] we are confident that the right to submit such a petition [for new trial] does not expire during a period of insanity, and therefore will remain available to the accused once he recovers from his affliction.

*United States v. Bell*, 6 USCMA 392, 396, 20 CMR 108, 112 (1955). The Court is as confident of that principle today as it was then. Treating the period of the stay in appellate proceedings as a period in which running of the 2–year petition period was suspended, appellant's petition for new trial was filed timely under Article 73.

Second, the Government asserts that the Court may not consider Dr. Tymeson's documents in this appeal. The Government reasons that it is not the petition for new trial that is before this Court but, rather, an appeal from denial of that petition by the Court of Military Review. Since the question before us is whether the Court of Military Review abused its discretion in denying the petition, the Government contends that it is illogical—and not legally permissible—for us to consider material that was not part of that petition.

Appellant responds by reminding us that we have considered other types of evidence like Dr. Tymeson's on a question of whether to order a *DuBay* proceeding. *See United States v. DuBay*, 17 USCMA 147, 37 CMR 411 (1967). Still, this case is not one in which the Court is offered evidence for the first time on appeal in order to raise an issue and is asked to order a *DuBay* hearing to resolve that issue. Instead, that essentially is what was done at the Court of Military Review, and now our task is limited to determining whether that court erred in denying the petition.

In the end, we do not need to resolve this dispute because we believe that the evidence that *was* before the Court of Military Review was sufficient upon which the court should have ordered a new trial. *See* Part III, *infra*.

Finally, in our review of the decision below, we have considered both appellant's mental responsibility for the charged offenses and his mental capacity to have stood trial. For some reason not apparent on its face, the petition for new trial filed in the Court of Military Review explicitly addressed only the former; but the proffered new evidence addressed both, and the

---

2. The Government begins its argument in this regard in its brief by asserting: "Neither the earlier Appellate Government Counsel nor the NMCMR apparently noticed that appellant's 15 March 1991 petition for new trial was not timely filed with the Judge Advocate General." Answer to Final Brief at 8. This argument is curious, if not apparently insincere, in light of the

following candid statement in appellant's brief in support of his petition in the Court of Military Review: "Although this petition is filed outside the two-year deadline established by Rule for Courts–Martial 1210(a), petitioner's mental condition had rendered him incapable of assisting in his defense until a few months ago." Brief in Support of New Trial at 2.

Court of Military Review resolved both. In light of our holding concerning appellant's mental responsibility, however, we need not address the decision below concerning his mental capacity.

## III

### A

As indicated earlier, appellant's petition for new trial was supported by an affidavit signed on October 5, 1990, by two of the three psychiatrists who had composed the Rule 706 board at the Bethesda Naval Hospital in July 1990, Drs. Elisabeth Cheney and Dallas Auvil. At the outset, the doctors indicate, "The purpose of this affidavit is to refute the findings of the 706 Sanity Board done on Larry Van Tassel, then SGT U.S. Marine Corps dated 11 March 1987."

The early portion of the affidavit is devoted to the doctors' analysis of the March 1987 board's report. It begins: "The 706 Sanity Board done on 11 March 1987 indicated that Sgt Van Tassel was floridly *delusional* and *paranoid,* yet it diagnosed him with a personality disorder and found him competent to stand trial." The affidavit continues and analyzes the 1987 report within its four corners, as follows:

The diagnosis then made in the Board was of a Mixed Personality Disorder with Antisocial and Paranoid Features. This diagnosis was given even though there was no history given verifying a lifelong pattern of maladaptive behavior which is an absolute requirement for the diagnosis of a personality disorder. Furthermore, the Board diagnosed the patient's extensive psychotic symptomatology as merely a stress-related psychotic decompensation even though when and if such a decompensation occurs in the setting of a personality disorder it is brief and often of low intensity[,] not severe and prolonged as the Board indicates was the case for this patient. Other more likely diagnoses, such as schizophrenia, are not entertained. In his discussion the psychiatrist stated that he felt that there was no indication of a psychotic process taking place during the time of

the alleged criminal acts even though he did not obtain adequate history to come to this conclusion. He also stated he felt the patient's psychosis had diminished and would not interfere with his ability to work with counsel on his own behalf even though within the Board itself is documentation of clear mental impairment secondary to psychosis.

Drs. Cheney and Auvil then trace in some detail appellant's psychiatric history and his personal and family background. On the basis of the March 1987 board report itself and their careful study of appellant's full medical and personal file, the two doctors opine without condition that the conclusions of the 1987 board were wrong and, indeed, not even supported by its own substantive content. Specifically, the doctors conclude:

From reviewing the patient's history, both before and at the time of his first 706 Sanity Board and the course of his history afterwards, it is clear that the patient has Schizophrenia, Paranoid Type. The 706 Sanity Board dated 11 March 1987 described a patient who was markedly ill, one who had had recent *auditory hallucinations* and extensive *paranoid delusions,* who had recently fractured his left hand striking a mirror from which he thought people were spying on him, and who was *delusional* during the time of the Board. Psychological testing revealed paranoid thought processes. The Board contained little to no evidence to support its final diagnosis of a personality disorder. It is our opinion that the diagnosis of the 706 Sanity Board is incongruent with the history and observations contained within the Board itself. It is our opinion that the patient *did not* have sufficient mental capacities to understand the nature of the proceedings and participate in his defense secondary to unremitting paranoid ideations and hallucinations. In addition it is our opinion that it is very probable that he suffered from a mental disease at the time of the alleged offenses.

In addition to these views of Drs. Cheney and Auvil, appellant's petition was supported by a paper trail of post-trial travails through the prison and medical systems. These other documents, of course, were considered by Drs. Cheney and Auvil and are consistent with their views, set out above.

For instance, a sanity board in December 1987, apparently initiated prior to proceeding against appellant for offenses in prison, concluded: "At the time of the alleged offenses [apparently in prison], Inmate Vantassel [sic] did have a severe mental disease," and "Inmate Vantassel [sic] does not have sufficient mental capacity to understand the nature of the proceedings and to conduct or cooperate intelligently in the defense." This was a little less than 8 months after appellant's trial here in issue.

Five months later, in April 1988, another psychiatric evaluation of appellant led to the diagnosis that appellant suffered from "*Delusional (Paranoid) Disorder, . . .* both *Grandiose Type . . .* and *Persecutory Type.*" That evaluation concluded: "It is my considered opinion that inmate Van Tassel is not currently competent to stand trial; I would expect him to regain full competency with treatment."

Other evaluations, prior to the time Drs. Cheney and Auvil saw appellant, are marked with comments such as these:

> The patient is suffering from a chronic form of severe mental illness, a psychosis with marked delusional and paranoid thinking which makes this patient substantially incapacitated in reasoning ability to be able to care for himself.
>
> \*     \*     \*
>
> Schizophrenia, paranoid type, DSM III–R, 295.3.
> [S]everely ill . . .
> [N]ot competent to decide whether to take [medically prescribed] medication.

Appellant argues that these evaluations and reports are relevant to his petition in two respects. First, they are part of the basis of the affidavit of Drs. Cheney and Auvil and their reflection, back to trial and before, concerning his sanity. Second, they are direct evidence of appellant's post-trial insanity that suggests his mental state at the time of the offenses and trial—in other words, that appellant did not get in that post-trial condition overnight.

## B

■ The standard to be applied by a Court of Military Review to determine "whether the issue of insanity was adequately raised . . . post-trial" is whether "the appellate court [is] convinced beyond a reasonable doubt that a different result would not obtain if the trier of fact had this new evidence before it." *United States v. Dock*, 28 MJ 117, 119–20 (CMA 1989). Appellant's offenses were alleged to have occurred in August 1986, prior to the November 14, 1986, effective date of Article 50a, UCMJ, 10 USC § 850a; that provision made lack of mental responsibility an affirmative defense, proof of which must be shouldered by the defense. *See United States v. Cosner*, 35 MJ at 280. Accordingly, as a pre-Article 50a case, a different result *would* obtain unless the trier of fact was convinced beyond a reasonable doubt that appellant did not lack substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law, as a result of a mental disease or defect. *United States v. Frederick*, 3 MJ 230 (CMA 1977).

Thus, when the *Dock* standard—by which an appellate court measures the adequacy of post-trial evidence to raise the issue of mental responsibility—is overlaid upon the pre-Article 50a trial test—for resolving that issue at trial, once raised—the test may be stated in the form of this question: *Is the appellate court convinced beyond a reasonable doubt* that *reasonable factfinders would have no reasonable doubt* that appellant did not suffer from a severe mental disease or defect such as to lack the substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the

requirements of the law? *Cf. United States v. Cosner, supra* at 281.[3]

It appears that the Court of Military Review applied this standard. Specifically, the court stated: "Accordingly, we are convinced beyond a reasonable doubt that a reasonable trier of fact, if presented with all available evidence, old and new, would find beyond a reasonable doubt that the petitioner was mentally responsible at the times of his offenses and that the petitioner was competent to stand trial." May 1991 unpub. op. at 3. It is not explicit that the court applied the correct substantive law of what, prior to Article 50a, constituted lack of mental responsibility; however, under the circumstances, *infra*, we will assume that the correct standard was applied in this regard, too. Left, then, is the question whether the court below abused its discretion by concluding, under this standard, that a new trial should not be ordered.

In *United States v. Lilly*, 25 MJ 403, 407 (CMA 1988), this Court recognized two extremes on the continuum of the impact on an appellate court of new evidence of this sort. At one end, the appellate court concludes in its own view that reasonable doubt does exist as to the accused's sanity, in which case the court "should set aside the findings of guilty and dismiss the charge." At the other end, the appellate court concludes that "the total evidence casts no doubt on the accused's mental capability," in which case the court "can properly affirm the findings of guilty." Cases at these extremes simply present circumstances in which the evidence as a whole presents no legitimate dispute on the question of mental responsibility.

"Between these extremes is a gray area. In that area, reasonable minds might differ as to the meaning and weight of the new and old matter." This gray area, unlike the two extremes on the continuum, includes cases in which there is significant evidence on each side of the question, such that a legitimate dispute is presented by the evidence as a whole.[4] Our decisions in *Lilly* and *Dock* instruct that, where that is the case, the appellate tribunal *may not resolve* that dispute: "Certainly disputed facts and opinions can better be tested in the crucible of examination at trial...." *United States v. Lilly, supra* at 407, quoted in *United States v. Dock, supra* at 119.

■ We are convinced that the new evidence offered to the Court of Military Review was significant and substantial evidence that presented a legitimate dispute on the question of appellant's mental responsibility, when considered with the other evidence as a whole. The affidavit from the two doctors who had comprised 2/3s of the most recent sanity board to examine appellant reflects careful thought, precisely articulated analysis, and a solidly based conclusion not only that appellant probably lacked mental responsibility for his offenses but that specifically criticized the methodology and conclusions of the pretrial Rule 706 board.

In this light, the conclusion of the Court of Military Review that the evidence as a whole gave it no reasonable doubt that the factfinders would have no reasonable doubt as to appellant's mental responsibility results from one of two possibilities: Either the court abused its discretion in not recognizing that the evidence raised a legitimate dispute as to appellant's mental responsibility or the court—notwithstanding its articulation of the correct standard—at least subconsciously slipped into an exercise of *resolving* that legitimate dispute. That is a task for the trial arena, not for the appel-

---

**3.** As the preceding discussion in this section of the opinion suggests, this simply is another means of asking whether, in the context of a petition for new trial that relates to mental responsibility, "[t]he newly discovered evidence, if considered by a court-martial in the light of all other pertinent evidence, would probably produce a substantially more favorable result for the accused." *See* RCM 1210(f)(2)(C), Manual for Courts-Martial, United States, 1984.

**4.** As this Court cautioned in *United States v. Lilly*, 25 MJ 403, 407 (1988), "[T]he mere existence of conflicting opinion does not necessarily require a rehearing."

late forum. *United States v. Lilly, supra; accord United States v. Dock, supra.*

## IV

The decision of the United States Navy–Marine Corps Court of Military Review is reversed. The findings and sentence are set aside. The petition for new trial is granted. The record is returned to the Judge Advocate General of the Navy for remand to the convening authority, who may either dismiss the charges or order a rehearing.

Chief Judge SULLIVAN and Judge COX concur.

GIERKE, Judge, joined by CRAWFORD, Judge (concurring in the result):

Although I agree with the majority's holding that the Court of Military Review abused its discretion in rejecting appellant's petition for a new trial, I disagree with the majority's use of a "legitimate dispute" test to determine whether the Court of Military Review abused its discretion.

The majority, citing *United States v. Lilly*, 25 MJ 403 (CMA 1988), holds that where "there is significant evidence on each side of the question, such that a legitimate dispute is presented by the evidence as a whole .... the appellate tribunal *may not resolve* that dispute." 38 MJ at 96. This "legitimate dispute" test is a lower standard than that of RCM 1210, Manual for Courts–Martial, United States, 1984. It is certainly possible for a legitimate dispute to arise from a battle of experts at a court-martial and for that legitimate dispute to be carried to the appellate level, supplemented by the proffer of additional, non-cumulative, expert testimony for the defense. In such a case a "legitimate dispute" test would be satisfied, but the additional expert testimony might not satisfy the RCM 1210(f)(2)(C) requirement for a showing that the additional testimony "would probably produce a substantially more favorable result for the accused."

Our decisions in *Lilly*, as well as *United States v. Triplett*, 21 USCMA 497, 45 CMR 271 (1972), on which *Lilly* relied, were based on paragraph 124, Manual for Courts–Martial, United States, 1969 (Revised edition). Paragraph 124 provided:

When further inquiry after trial produces new information which raises an issue concerning mental responsibility at the time of the offense, the affected charges and specifications may be dismissed and appropriate action taken on the sentence or a new trial or rehearing may be directed, as may be appropriate under the circumstances of the case.

In *Triplett* we observed: "Certainly disputed facts and opinions can better be tested in the crucible of examination at trial ....."; but we did not mandate a rehearing or new trial whenever an issue is raised. Instead, we set out a test similar to RCM 1210: "Still to be determined is whether, considering all the matter on the issue, a different verdict might reasonably result if the issue was again presented to a court-martial." 21 USCMA at 503, 45 CMR at 277. *See also United States v. Lilly*, 25 MJ at 410 (Cox, J., concurring). There is no reference to a "legitimate dispute" test in either *Lilly* or *Triplett*.

In any event, this "legitimate dispute" test is not applicable to appellant's case. Appellant's case is controlled by the Manual for Courts–Martial, United States, 1984, which did not carry forward the language of paragraph 124 of the 1969 Manual, *supra*. Thus, in my view, even if there ever was a "legitimate dispute" test, it died along with paragraph 124 of the 1969 Manual.

The correct legal standard for appellant's case is not whether there is a "legitimate dispute" regarding appellant's sanity; the correct legal standard is whether the Court of Military Review abused its discretion by deciding that the post-trial evidence of insanity did not pass the RCM 1210 test. I conclude that the court below did abuse its discretion. Accordingly, I concur in the result.