**UNITED STATES**

v.

**Albert D. SWAN, Jr., 433–29–3304, Mess Management Specialist Second Class (E–5), U.S. Navy.**

**NMCM 96 01098.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 10 April 1996.

Decided 19 March 1998.

LT C.J. McEntee, JAGC, USNR, Appellate Defense Counsel.

LCDR Christian L. Reismeier, JAGC, USN, Appellate Government Counsel.

Before CLARK, Senior Judge, OLIVER and LEO, Appellate Military Judges.

OLIVER, Judge:

A military judge, sitting as a special court-martial, convicted the appellant, contrary to his pleas, of three specifications of violating a lawful general regulation prohibiting sexual harassment, one specification of indecent exposure, and one specification of solicitation, in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934 (1994)[hereinafter UCMJ].[1] The adjudged sentence included confinement for 100 days, forfeiture of $400.00 pay per month for 3 months, reduction to the lowest enlisted pay grade, and a bad-conduct discharge. The convening authority approved the sen-

tence and, except for the bad-conduct discharge, ordered it executed.

We have examined the record of trial, the six assignments of error,[2] and the Government's response thereto. After careful consideration, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the accused was committed.[3] However, further administrative review, and possible relief, is necessary.

## Factual Insufficiency

In his first two assignments of error, the appellant contends that the Government failed to prove two of the offenses against him, Specification 3 of Charge I and Specification 2 of Additional Charge II, beyond a reasonable doubt. After reviewing the evidence and the applicable standard in *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987), we are confident, beyond a reasonable doubt, that the appellant committed all of the crimes of which he was convicted. His arguments to the contrary are without substantial merit.

## Unconstitutional Policy on Sexual Harassment

In his third assignment of error, the appellant contends that he cannot be held crimi-

1. The military judge acquitted the appellant of three specifications of sexual harassment, one specification each of indecent language and an indecent act, and one specification of solicitation.

2. I. THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT UNDER SPECIFICATION 3 OF CHARGE I THAT APPELLANT SEXUALLY HARASSED FIREMAN RECRUIT WENDY PENNING.

 II. THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT UNDER SPECIFICATION 2 OF ADDITIONAL CHARGE II THAT APPELLANT WRONGFULLY SOLICITED TABITHA GANDY TO COMMIT AN INDECENT ACT.

 III. APPELLANT CANNOT BE CONVICTED OF VIOLATING THE DEPARTMENT OF THE NAVY POLICY ON SEXUAL HARASSMENT BECAUSE THAT ORDER IS UNCONSTITUTIONALLY VAGUE ON ITS FACE.

 IV. THE CHANGES TO ARTICLE 57, UCMJ, AND THE ADDITION OF ARTICLE 58b, UCMJ, VIOLATE THE *EX POST FACTO* CLAUSE OF THE CONSTITUTION WITH RESPECT TO THE APPELLANT.

 V. THE COURT MARTIAL ORDER SHOULD BE CORRECTED TO REFLECT THE MILITARY

JUDGE'S MERGER OF SPECIFICATIONS 1 AND 2 OF CHARGE I PURSUANT TO APPELLANT'S MULTIPLICITY MOTION. (Citation omitted.)

 VI. THE CONVENING AUTHORITY ERRED BY FAILING TO ORDER AN INQUIRY INTO APPELLANT'S MENTAL CAPACITY IN LIGHT OF TRIAL DEFENSE COUNSEL'S REPRESENTATIONS IN MATTERS SUBMITTED PURSUANT TO RULE FOR COURTS–MARTIAL 1106. (Citations omitted.)

3. Because the issue was not raised at trial or on appeal, we will not discuss whether the preemption doctrine should have barred prosecution of the appellant's misconduct under Article 92, UCMJ, 10 U.S.C. § 892. See *United States v. Asfeld*, 30 M.J. 917, 923 (A.C.M.R.1990)(dictum). Because this matter was resolved at a special court-martial, the appellant was not subjected to an enhanced punishment. Moreover, unlike the subjective standard found wanting in the Army's sexual harassment order in *Asfeld, id.*, Secretary of the Navy Instruction 5300.26B of 6 Jan. 1993, subj: Department of the Navy (DON) Policy on Sexual Harassment, incorporates a reasonable-person standard.

nally liable for violating the Department of the Navy's policy on sexual harassment because the language of the order is unconstitutionally vague. He also contends that it is unconstitutionally overbroad because of its potential chilling effect on the exercise of his First Amendment rights. We disagree that the appellant was in any doubt that the activities in which he was engaged were criminal or that the instruction had any chilling effect on his constitutional freedom of expression.

The appellant focuses on the language of the applicable regulation that prohibits sexual harassment which creates a "hostile environment." *See* Secretary of the Navy Instruction 5300.26B of 6 Jan. 1993, subj: Department of the Navy (DON) Policy on Sexual Harassment [hereinafter SECNAVINST 5300.26B].[4] Paragraph 8b of the instruction prohibits DON personnel from engaging in sexual harassment, defined in enclosure (1) of the instruction. The Government had the military judge take judicial notice of SECNAVINST 5300.26B which, absent objection, he did. Record at 8. A copy was included as part of the record of trial. *Id.; see* Appellate Exhibit II.

This is the first time this court has considered directly the constitutionality of this instruction. In *United States v. Daniel,* 42 M.J. 802, 803–04 n. 4 (N.M.Ct.Crim.App. 1995), an appellant assigned the precise issues presented in this case. However, this court determined that the earlier version of this instruction (SECNAVINST 5300.26A) was not a punitive order and set aside the sexual harassment conviction on that basis. *Daniel,* 42 M.J. at 806. The Secretary of the Navy clearly intended that the subsequent version, under which the appellant was convicted, be punitive. SECNAVINST 5300.26B, ¶ 8c; *see id.,* ¶¶ 4b, 8a. Therefore,

we are squarely faced with the constitutional issues.

 In *United States v. Peszynski,* 40 M.J. 874 (N.M.C.M.R.1994), *review denied,* 44 M.J. 270 (1996), this court concluded that SECNAVINST 5300.26A was directed toward behavior within the military working environment, and not sexual harassment in which the appellant engaged while moonlighting as the evening manager of a Pizza Hut franchise.[5] Before reaching this conclusion, however, the court articulated the following principles applicable to the instant case:

> A fundamental feature of due process of law is that one's guilt or innocence of a criminal accusation be determined by objective, clearly understood standards of criminality. *Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). This feature is bound closely to another central theme of due process—that criminal statutes and implementing regulations provide fair notice to the public that certain proscribed behavior is subject to criminal sanction. *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). To comply with these constitutional requirements, criminal statutes must define ... precisely what constitutes criminal behavior and set forth an adequate yardstick by which to distinguish it from non-criminal behavior. *Smith,* 415 U.S. at 574, 94 S.Ct. at 1248.

*Peszynski,* 40 M.J. at 878 (dictum).

As a general rule, service members, no less than other citizens, are entitled to most of the protections of the Constitution. *Chappell v. Wallace,* 462 U.S. 296, 304, 103 S.Ct. 2362, 2367–68, 76 L.Ed.2d 586 (1983); *Brown v. Glines,* 444 U.S. 348, 354, 100 S.Ct. 594, 599, 62 L.Ed.2d 540 (1980). But the Supreme

---

4. We note that the version of the instruction under which the appellant was convicted, Appellant Exhibit II, was not the actual one in effect at the time he committed the offenses or at the time of trial. *See* SECNAVINST. 5300.26B, Change 1 of 30 Sept. 1994. The only changes were to Enclosure (1). All concerned accepted the earlier version as the applicable SECNAVINST, both for purposes of trial and on appeal, and this provides no basis to disturb the findings.

5. Perhaps partially or wholly in response to the *Peszynski* decision, the Secretary of the Navy promulgated Change 1 to SECNAVINST 5300.26B on 30 September 1994. Among other minor changes to Enclosure (1), Change 1 added a paragraph explaining what constituted an "abusive work environment" and "workplace," giving the latter term an "expansive" reading which "may include conduct on or off duty, 24 hours a day." SECNAVINST. 5300.26B, Change 1, Enclosure (1), ¶ 2.

Court "has long recognized that the military is, by necessity, a specialized society separate from civilian society." *Parker,* 417 U.S. at 743, 94 S.Ct. at 2555. *See Chappell,* 462 U.S. at 300, 103 S.Ct. at 2365–66; *Orloff v. Willoughby,* 345 U.S. 83, 94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953). The UCMJ may constitutionally "regulate aspects of the conduct of members of the military which in the civilian sphere are left unregulated." *Parker,* 417 U.S. at 749, 94 S.Ct. at 2558. In *Parker* the Supreme Court expanded on this theme: "While the members of the military are not excluded from the protection granted by the [Constitution], the different character of the military community and of the military mission requires a different application of those protections." *Id.* at 758, 94 S.Ct. at 2563.

■ Some behavior that might be tolerable in the civilian community, such as adultery and fraternization (unduly personal relationships within an organization), could well prove disruptive in the military environment by undermining the effectiveness of a unit. Moreover, under certain circumstances, such sexual behavior might be discrediting to the military service. *Id.* at 759, 94 S.Ct. at 2563. If the effect of the conduct "directly and palpably" prejudices good order and discipline, undermines the mission, or discredits the service, the military may constitutionally prosecute such conduct, even though the Constitution would ordinarily protect such conduct from criminal prosecution if civilians engaged in it. *Id.* at 753, 94 S.Ct. at 2560. Military personnel must regularly submit to restrictions on their freedoms which would never pass constitutional muster on the "outside." *See Goldman v. Weinberger,* 475 U.S. 503, 510, 106 S.Ct. 1310, 1314–15, 89 L.Ed.2d 478 (1986)(holding constitutional uniform regulations which prohibited an Orthodox Jew from wearing a yarmulke while in uniform indoors); *Brown,* 444 U.S. at 361, 100 S.Ct. at 603 (recognizing restrictions on the right of military personnel to petition for redress of grievances).

■ We recognize that SECNAVINST 5300.26B is, in many respects, not a model of precise legal draftsmanship.[6] This is no doubt because the nature of sexual harassment, which is criminal, varies only in degree from the way some Sailors and Marines conduct their interpersonal affairs, which can be boorish and coarse.[7] Even so, we conclude that SECNAVINST 5300.26B adequately defines what constitutes "sexual harassment," prohibits DON personnel from engaging in such harassment, and makes it clear that any violation of the relevant provisions "by military personnel is punishable in accordance with the UCMJ...." SECNAVINST 5300.26B, ¶ 8c. Although perhaps somewhat "imprecise," the standards contained in the instruction are "comprehensible." *Parker,* 417 U.S. at 755, 94 S.Ct. at 2561.

The appellant argues at length that the criminality of actions under this instruction are based on "the vagary of individual sensibilities as an essential element—as opposed to the community's standards." Appellant's Brief and Assignment of Errors at 13; *see id.* at 12–16. However, we are not persuaded. The determination of whether "unwelcome sexual behavior ... produces a work atmosphere which is offensive, intimidating, or abusive" is tested against "the reasonable person standard." SECNAVINST 5300.26B, Enclosure (2), ¶ 4; *see id.,* ¶ 6. This court made the following observation in *Peszynski:*

■ To constitute sexual harassment under Navy policy, the behavior must not only be of a certain nature, it must also *cause* a certain *result,* namely, interference with the victim's job performance or creation of a "hostile" working environment. Those key features of sexual harassment are at least standards that can be measured objectively.

---

**6.** *See* J. Richard Chema, *Arresting "Tailhook": The Prosecution of Sexual Harassment in the Military,* 140 MIL.L.REV. 1, 21–25 (1993)(concluding that several of the definitions concerning "hostile environment" sexual harassment in the instruction are defectively vague). We do not offer an opinion as to whether the 1994 change to the instruction enhances the precision.

**7.** During her testimony, EMFN Massie stated that it wasn't until the appellant called her into the room just off the quarterdeck, where she was standing watch, to witness him engaged in masturbation, that she became upset. His earlier vulgar speech and sexual solicitation of her did not upset her unduly, she testified, because she had "gotten used to Navy guys." Record at 59.

*Peszynski,* 40 M.J. at 881 (dictum)(emphasis in original).[8]

■ While there are hypothetical situations which might give us reason to set aside the conviction on the basis that the accused was convicted unfairly, the evidence in this case clearly established that the appellant's conduct both interfered with his victim's performance and created an intimidating, hostile, and offensive environment. Moreover, there is no doubt that the appellant was (or certainly should have been) aware that his actions constituted sexual harassment. The appellant advised several of his victims that it would be better if they would keep the discussions a secret between them, because he did not want to get into any "trouble." *See* Record at 35 (Mrs. Gandy); Record at 14–15 (after Airman Apprentice Penning rebuffed him when asked whether she would be willing to masturbate him or watch him while he masturbated, the appellant advised her: "I don't want somebody coming up to me on Monday and, you know, ask me about this[.]"); *see also* Record at 56 (requesting that Fireman Massie keep a lookout on his behalf while he masturbated in a room just off the quarterdeck).

While there was no evidence which directly established that the appellant had received sexual-harassment training, during cross-examination of the victims the defense counsel elicited testimony that they had all received such training. As an 11–year veteran and supervisor, there is no question but that he should have been well aware that he was not to solicit his subordinates for sex or engage in sexual banter or activities which would likely make them uncomfortable. Nor could he have had any doubt that his actions in this case crossed well over the line into the area of criminal behavior.

The appellant argues a slightly different theory as well: he contends that SECNAVINST 5300.26B is unconstitutional because it might have a chilling effect on protected speech. We disagree.

■ Because the instruction clearly prohibited the appellant's conduct, he has no standing to challenge its constitutionality on the basis that it is vague and overbroad. As our higher court has held, an appellant has no standing to attack a law if he is not one of the "rare 'entrapped' innocents" under the statute with which he is charged. *United States v. McGuinness,* 35 M.J 149, 152 (C.M.A.1992) (quoting *United States v. Morison,* 844 F.2d 1057, 1071 (4th Cir.1988)). *See Parker,* 417 U.S. at 756, 94 S.Ct. at 2561–62.

While a military accused may prevail in having a regulation declared overbroad where the defect is obvious, that is hardly the case here. The instruction at issue regulates both conduct and speech. To prevail on this constitutional challenge, the appellant must show that the overbreadth is not only "real, but substantial as well, judged in relation to the [instruction's] plainly legitimate sweep." *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973). The clear purpose of the instruction is legitimate: to promote good order, discipline, and military effectiveness. The remote possibility that the appellant may have experienced an unconstitutional "chilling" of his free-speech right does not overcome the principle, discussed above, that if the effect of the service member's conduct "directly and palpably" prejudices good order and discipline, undermines the mission, or discredits the service, the military may constitutionally prosecute such conduct. *Parker,* 417 U.S. at 753, 94 S.Ct. at 2560.

After careful review of the excellent briefs of counsel, appellate case law, and the facts of this case, we hold that SECNAVINST 5300.26B is constitutional and was applied appropriately in this case. Therefore, this assignment of error is without merit.

### *Ex Post Facto* Punishment

In his fourth assignment of error, the appellant contends that the 1996 amendment to Article 57, UCMJ, 10 U.S.C. § 857, and addition of Article 58b, Uniform Code of Military Justice, 10 U.S.C. § 858b (1996), violate the

8. The most recent version of the instruction makes the requirement of a causal connection even more explicit: "Such conduct [must have] the purpose or effect of unreasonably interfering with an individual's work performance or creat[ing] an intimidating, hostile, or offensive working environment." SECNAVINST. 5300.26B, Change 1, Enclosure (1), ¶ 1c.

*ex post facto* clause of the Constitution. *See* Pub.L. No. 104–106, §§ 1121, 1122, 110 Stat. 462, 463, *as amended by* Pub.L. No. 104–201, § 1068, 110 Stat. 2655 (1996). We agree that the appellant is entitled to administrative review of his claim and, if appropriate, restoration of any property illegally taken from him. Our superior court recently resolved a similar appellate issue as follows:

> Collection of any forfeitures, and execution of [any] reduction in grade prior to the date of the convening authority's action are hereby declared to be illegal. Any [illegal] forfeitures already collected from appellant and any pay and allowances withheld because of the illegal reduction in grade will be restored.

*United States v. Gorski,* 47 M.J. 370, 375 (1997). In our decretal paragraph we will order appropriate administrative review.

### Defective Court–Martial Order

■ In a summary assignment of error, the appellant contends that the military judge merged Specifications 1 and 2 of Charge I pursuant to his multiplicity motion. Therefore, he argues that the court-martial order, which indicates that the appellant was found guilty of both specifications, is incorrect and must be reissued.

Having studied the record of trial closely, we do not fully understand what the military judge intended to do. He first announced separate findings of guilty, *inter alia,* to Specifications 1 and 2 under Charge I. After the appellant and his counsel had resumed their seats, the military judge stated: "Now Specifications 1 and 2 under Charge I will be merged into one Specification and treated as such. The other multiplicity motions are denied." Record at 95–96. We conclude that the military judge intended to find the appellant guilty of both of these Specifications, but to treat the two as multiplicious for the purpose of sentencing. Therefore, the promulgating order correctly sets forth "the findings or other disposition of each charge and specification[.]" RULE FOR COURTS-MARTIAL 1114(c)(1), MANUAL FOR COURTS-MAR-TIAL, UNITED STATES (1995 ed.)[hereinafter R.C.M.].

We also note that the appellant did not comment on this alleged defect in his response to the Staff Judge Advocate's Recommendation. Since the two specifications are not "facially duplicative," the appellant waived the issue on appeal. *United States v. Lloyd,* 46 M.J. 19, 23 (1997)(quoting *United States v. Broce,* 488 U.S. 563, 575, 109 S.Ct. 757, 765–66, 102 L.Ed.2d 927 (1989)).

Therefore, this assignment of error is without merit.

### Inquiry Into the Appellant's Mental Capacity

Finally, citing *United States v. Van Tassel,* 38 M.J. 91 (C.M.A.1993), the appellant contends in a summary assignment of error that the convening authority erred by failing to order an inquiry into his mental capacity in light of trial defense counsel's representations in matters submitted pursuant to R.C.M. 1106. In the petition for clemency, the trial defense counsel requested that a qualified mental health care professional evaluate the appellant to determine if he suffered from one or more sexual disorders which manifested themselves in the behavior for which he was convicted. Having read the petition and the applicable law carefully, we conclude that this assignment of error is without merit. *See* Art. 50a, UCMJ, 10 U.S.C. § 850a; R.C.M. 1107(b)(5).

### Conclusion

Accordingly, we affirm the findings and sentence, as approved on review below. The record of trial is returned to the Judge Advocate General of the Navy for appropriate remedial action.

Senior Judge CLARK and Judge LEO concur.