# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**

**J.A. FISCHER, A.C. RUGH, T.H. CAMPBELL**
Appellate Military Judges

**UNITED STATES OF AMERICA**

**v.**

**MARK J. ROSARIO**
**SERGEANT (E-5), U.S. MARINE CORPS**

**NMCCA 201500251**
**SPECIAL COURT-MARTIAL**

**Sentence Adjudged:** 27 Feb 2015.
**Military Judge:** Maj M.D. Libretto, USMC.
**Convening Authority:** Commanding Officer, Marine Aircraft Group 26, 2d MAW, Jacksonville, NC.
**Staff Judge Advocate's Recommendation:** LtCol J.J. Murphy, III, USMC.
**For Appellant:** LT Doug Ottenwess, JAGC, USN.
**For Appellee:** Capt Matthew M. Harris, USMC; LT Robert Miller, JAGC, USN.

**28 January 2016**

-------------------------------------------------------
## OPINION OF THE COURT
-------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

CAMPBELL, Judge:

A special court-martial members panel with enlisted representation convicted the appellant of violating a lawful general order under Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. The convening authority approved the panel's announced sentence of reduction to pay grade E-1 and a bad-conduct discharge.

The appellant raises the following assignments of error: (1) unconstitutional vagueness of the Marine Corps' sexual harassment policy, as applied in his case; (2) legal and factual insufficiency; and (3) sentence severity. After carefully considering the record of trial and parties' submissions, we conclude the findings and sentence are correct in law and fact, and find no error materially prejudicial to the appellant's substantial rights. Arts. 59(a) and 66(c), UCMJ.

## I. Background

When she joined a new command in September 2013, the appellant became Lance Corporal (LCpl) B.A.'s new platoon sergeant. Over the next five months the appellant made numerous workplace comments which made LCpl B.A. uncomfortable, including "te quiero" (Spanish for "I want you"), "[y]ou're very pretty . . . too pretty to be a Marine[,]" and "I really missed you . . . I really missed your face . . . I missed having you around."[1] In response, LCpl B.A. questioned the appellant about these comments, indicated her disapproval, and/or attempted to discuss more professional subjects. Upon her return from leave spent with her out-of-state husband, the appellant asked LCpl B.A. how many times the couple had sex over the Thanksgiving holiday. She replied, "Sergeant, that's none of your business."[2] Later, the appellant agreed to temporarily hold LCpl B.A.'s apartment key that had been used by another platoon member during LCpl B.A.'s Christmas leave. When she asked for the key, the appellant said he was keeping it as a spare "for when [he was going to] come over."[3] Grabbing the key, LCpl B.A. replied, "absolutely not."[4]

There were also non-verbal advances. The appellant placed his hand over hers and kissed her cheek while she worked on a refrigeration unit in October 2013. He put his hand on her neck and stuck his tongue in her ear while she repaired another unit in January 2014. Although she had simply retracted her hand during the October incident, she reacted strongly in January, pushing the appellant and telling him "[her] husband would...kill [him]."[5] She then immediately reported this incident to another Marine, called her sister afterwards, and left work the next morning in an effort to discuss the appellant's behavior with a Navy Chaplain.

LCpl B.A. again confronted the appellant when she returned from the Chaplain's office. Although he agreed that she had never invited his inappropriate advances, he explained, "I can't help it, I like you. I have grown feelings for you. . . . I always made sure that nobody was around. I always ma[d]e sure no one was looking. I was always very careful. It's not like I asked you to go to have dinner, or hang out, go to the movies or something. . . . [P]eople do this

---

[1] Record at 122, 134, 149.

[2] *Id.* at 126.

[3] *Id.* at 128.

[4] *Id.*

[5] *Id.* at 131, 198.

all of the time in the Marine Corps. It's normal, it's okay."[6] Thereafter, feeling she could not be alone with him, LCpl B.A. asked others to accompany her anytime she had to speak with the appellant.

*Vagueness*

The appellant was convicted of sexual harassment under Marine Corps Order (MCO) 1000.9A (30 May 2006). It identifies behaviors that constitute sexual harassment as "unwelcome sexual advances . . . and other verbal or physical conduct of a sexual nature when . . . [s]uch conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creates an intimidating, hostile, or offensive working environment."[7] It further provides, "any military member . . . who makes deliberate or repeated unwelcome verbal comments, gestures, or physical contact of a sexual nature in the workplace is also engaging in sexual harassment."[8]

As a fundamental aspect of his argument, the appellant contends only his verbal comments to LCpl B.A. are appropriately considered in relation to the sexual harassment conviction since he was acquitted of sexual contact and assault offenses corresponding to the October 2013 and January 2014 incidents. He then distinguishes this case from the hypothetical scenario in Enclosure 1 of MCO 1000.9A, in which a male corporal continues asking a female co-worker about her sex life after she says those questions are unwelcome. As he "did not press the issue when LCpl B.A. told him that his question regarding sex with her husband wasn't appropriate and never re-addressed it with her," the appellant argues, "the instruction fails to provide criteria for determining if and when [his] comments became criminal, thus allowing his guilt or innocence to be decided by wildly varying standards of interpretation."[9]

We review whether a regulation is unconstitutional as applied *de novo*. *United States v. Ali*, 71 M.J. 256, 265 (C.A.A.F. 2012); *United States v. Hughey*, 46 M.J. 152, 154 (C.A.A.F. 1997). When a void-for-vagueness challenge is raised for the first time on appeal, we review only for plain error. *United States v. Goings*, 72 M.J. 202, 205 (C.A.A.F. 2013). Plain error requires an appellant establish that an error which is "'clear or obvious under current law'" affected his substantial rights. *United States v. Karron*, 348 F.Appx. 632, 633 (2d Cir. 2009) (quoting *United States v. Gonzalez*, 110 F.3d 936, 945-46 (2d Cir. 1997)).

Due process requires fair notice that an act is criminal before prosecution. *United States v. Saunders*, 59 M.J. 1, 8 (C.A.A.F. 2003). The test for unconstitutional vagueness is whether a person could reasonably know the charged conduct was criminal. *Parker v. Levy*, 417 U.S. 733, 757 (1974). Fair notice that an act is criminal may come from multiple sources, including "federal Law, state law, military case law, military custom and usage, and military regulations."

---

[6] *Id.* at 134.
[7] Prosecution Exhibit 1 at 4.

[8] *Id.*

[9] Appellant's Brief of 2 Nov 2015 at 8-9.

*Unites States v. Vaughan*, 58 M.J. 29, 31 (C.A.A.F. 2003) (citations omitted). We "need not decide whether custom or regulation, state law, or military case law alone would meet the requirements for due process notice" if, "when addressed together, appellant should reasonably have understood that [the] contemplated conduct was subject to military criminal sanction." *Id.* at 33. A statute also must not be so standardless that it invites arbitrary enforcement. *Johnson v. United States*, 135 S.Ct. 2551, 2556 (2015) (citing *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983)).

The appellant's vagueness argument has a faulty premise. When the same evidence is offered in support of two separately charged offenses, as the physical encounters were here, "an acquittal on one [may] not be pleaded as *res judicata* of the other." *Dunn v. United States*, 284 U.S. 390, 393 (1932). "Because the court preferred to free [the appellant] on one specification alleging a more serious offense does not also mean it found that one particular element of a less aggravated offense was not established. . . . It is an acknowledged fact that verdicts are sometimes founded on leniency, compromise, or mistake, and if the accused is the beneficiary of compassion or error, he is not in a position to complain." *United States v. Jackson*, 21 C.M.R. 193, 197-98 (C.M.A. 1956).

Considering all the relevant facts, including the incidents where he touched LCpl B.A., we have no difficulty concluding that a person of ordinary intelligence could reasonably understand the regulation proscribed the appellant's conduct. Beyond departing from military customs, *see generally* Marine Corps Manual, ¶¶ 1100.3-1100.5 (May 13, 1996) (concerning professional and personal relationships between Marines and the leadership responsibilities of noncommissioned officers), the conduct clearly meets the MCO's definition of sexual harassment.

Similar provisions from iterations of Secretary of the Navy Instruction 5300.26 defining and prohibiting sexual harassment have overcome unconstitutional vagueness challenges. *See United States v. Balcarczyk*, 52 M.J. 809 (N.M.Ct.Crim.App. 2000); *United States v. Swan*, 48 M.J. 551 (N.M.Ct.Crim.App. 1998); and *United States v. Jones*, No. 200000845, 2003 CCA LEXIS 4, unpublished op. (N.M.Ct.Crim.App. 16 Jan 2003). Similarly, we find MCO 1000.9A "adequately defines what constitutes 'sexual harassment,' prohibits . . . engaging in such harassment, and makes it clear that any violation of the relevant provisions 'by military personnel is punishable in accordance with the UCMJ.'" *Swan,* 48 M.J. at 555 (citation omitted). Applying a reasonable person standard to determine whether there was unwelcomed sexual behavior that produced an intimidating, hostile or offensive working environment as described by the victim--objectively measurable standards--meets the due process notice requirements and sufficiently ensures the order does not encourage arbitrary or discriminatory enforcement.

***Legal and Factual Sufficiency***

Pursuant to Article 66(c), UCMJ, we review *de novo* the legal and factual sufficiency for each approved guilty finding. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). The test for legal sufficiency is whether, "considering the evidence in the light most favorable to the prosecution, a reasonable

4

factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 324-25 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Factual sufficiency requires us to be convinced of the appellant's guilt beyond a reasonable doubt, "after weighing the evidence in the record of trial and making allowance for not having personally observed the witnesses." *Id.* at 325.

Again limiting his analysis, the appellant asserts the Government failed to prove his comments to LCpl B.A. were sexual in nature and that they affected or unreasonably interfered with her work environment. Again we disagree. LCpl B.A.'s testimony that the appellant made unwanted sexual advances--touching her hand and kissing her cheek during the October 2013 incident, touching her neck and sticking his tongue in her ear during the January 2014 incident, and making numerous comments about his attraction to and desire for her throughout the course of several months--also clearly conveyed that she felt harassed.[10]

Considering the evidence in the light most favorable to the Government, we find the evidence to be legally sufficient to support conviction. Weighing the trial evidence, while making allowances for not having personally observed the witnesses, we are also convinced beyond a reasonable doubt of the appellant's guilt.

*Sentence Appropriateness*

We conduct *de novo* review for sentence appropriateness, *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006), which "involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). It requires our "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and character of the offender." *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (citation and internal quotation marks omitted). Despite our significant discretion in reviewing the appropriateness and severity of the adjudged sentence, we may not engage in acts of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

The appellant unpersuasively argues that his sentence should include only a reduction to the pay grade of E-4. With individualized consideration of the appellant, the nature and seriousness of his offense, his overall record of service, and all the matters within the record of trial, we find the convening authority approved an appropriate sentence.

---

[10] "[S]he saw that I was upset. And obviously I was crying, and I just wanted to leave. And I told her what happened. I, you know, broke down and told her everything that had been happening and all of these little things. . . . She was, like, you know, what do you need? . . . And I was just, like . . . . I'll go see the chaplain tomorrow morning. Just don't say anything, like, I just got to think this through and figure what I'm going to do. Because at that point, I knew he had obviously crossed the line and, you know, obviously blamed myself for not saying something sooner. But I said, you know, I have to figure it out. And I just wanted to leave. I didn't want to be there around, I don't want [to] see him. I don't want to, like –- I just kind of got in my car, broke down, called my sister. Got home, washed my ear about 50 times for, like, five hours because I felt disgusting." Record at 132-33.

### III.  Conclusion

The finding and sentence as approved by the convening authority are affirmed.

Senior Judge FISCHER and Judge RUGH concur.



For the Court


R.H. TROIDL
Clerk of Court